Argued December 18, 1972, reversed and remanded February 20,
petition for rehearing denied March 15, petition for review
denied June 12, 1973

STATE OF OREGON, *Respondent, v.*
MAX SAGNER, Jᴿ. (No. C 72-03-0762),
*Appellant.*

STATE OF OREGON, *Respondent, v.*
RITA SAGNER (No. C 72-03-0763 Cr),
*Appellant.*

506 P2d 510

*Gary D. Babcock,* Public Defender, Salem, argued the cause and filed the brief for appellants.

*John H. Clough,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and John W. Osburn, Solicitor General, Salem.

Before SCHWAB, Chief Judge, and LANGTRY and FOLEY, Judges.

FOLEY, J.

Defendants were found guilty of theft in the first degree (ORS 164.055) following a jury trial. Their principal assignment of error on appeal is that the trial court erred in denying their motion to suppress certain evidence. Because of our resolution of that issue, we find it unnecessary to reach the further contention by defendant Rita Sagner that the court erred in denying her motion for a directed verdict.

The pertinent facts relating to the motion to suppress are as follows. On January 12, 1972 a detective for the Portland Police Bureau executed an affidavit in support of his request for the issuance of a search warrant to search defendants' home. The affidavit[1] recited in meticulous detail the basis for the affiant's belief that a certain movie camera and

---

[1] The affidavit read in pertinent part:

"* * * * *

"I am a detective for the Portland Police Bureau and I am assigned to the Burglary Detail. I have been a policeman for 14 years.

"According to official reports of the Portland Police Bureau, Eads Transfer and Storage located at 901 N. Columbia Blvd., Portland, Multnomah County, Oregon, was burglarized on December 30, 1971. On January 11, 1972 I talked to Mr. Virgil Calavan who told me he was a manager for Eads Transfer and Storage, and he told me that property belonging to

a strobe light camera attachment were on the premises. The affidavit then set out various sources from which the affiant had heard that defendant Max Sagner had a reputation for dealing in stolen property. Based on

Karl L. Hamann was stolen from the warehouse located at 901 N. Columbia Blvd. during this burglary of December 30, 1971.

"On January 12, 1972 I talked to Karl L. Hamann who told me that among the property taken of his which he had stored at Eads Transfer and Storage was a Bell and Howell 8 MM Soundomatic Camera and a Strobe light camera attachment. These two items and other things were taken, he told me, during the burglary of December 30, 1971 as far as he knew.

"On January 11, 1972 I talked to George Bennett who told me that on December 30, 1971 at about 4:00 AM he, along with a companion, broke into Eads Transfer and Storage warehouse and took from the warehouse without the permission of the owners a Bell and Howell 8 MM Soundomatic Camera and a Strobe light camera attachment. He told me that he then took this property to Max Sagner at about noon on December 30, 1971, who works at Sagner Motors located on 82nd Avenue, Portland, Multnomah County, Oregon. He told me he sold the two items to Sagner for $50.00 and received a $20.00 bill and a check written out to Bennett in the amount of $30.00. Bennett told me that Sagner knew the property was stolen when he purchased it and that Sagner has a reputation for dealing in stolen property. At the time of the sale Max Sagner told George Bennett, according to Bennett, that he, Sagner, was happy to get the camera since he wanted to take it to his home in order to take pictures of his baby and that he had been looking for a camera of this type for a long time. Bennett told me that Sagner further requested that he, Bennett, steal four good tires for his Eldorado Cadillac and that he would pay him $100.00 for the tires. In addition, he requested that Bennett steal a Sony color television set.

"I personally saw a $30.00 check made out to George Bennett and signed by Max Sagner, Jr. and the check was written on an account for Sagner Motors. I have a copy of this check.

"Through my investigation I know that Max Sagner lives at 14501 NE Halsey in Multnomah County, Oregon, and I have seen Max Sagner in possession of a black Eldorado Cadillac with California license number BYY-511. Detective Dupay of the Portland Police Bureau told me that he has

this affidavit the judge of the district court issued a search warrant authorizing the police to search for the camera and strobe light and further authorizing them to "photograph any other property in the premises

followed Max Sagner from Sagner Motors to the house at 14501 NE Halsey and that Sagner was driving a Cadillac at that time. This occurred within the last two weeks. I know Sagner Motors is located at 635 SE 82nd in Portland, Multnomah County, Oregon.

"Detective Ron Winters told me that during December of 1970, Max Sagner, Jr. told him that he deals in stolen property and that there is nothing the police can do about it so he will continue to so deal in stolen property.

"Detective Dupay told me that the house belonging to Max Sagner at 14501 NE Halsey is a one-story single unit dwelling house with a brick front and a red tile roof.

"From fellow police officers I have learned that Max Sagner, Jr. has a reputation of continually dealing in stolen property. Officers have told me that his place of business is continually frequented by known burglars and thieves. Officers from Washington County have told me that Max Sagner, Jr. is known to them as a dealer in stolen property and that they have investigated him within the last three months. Clark County, Washington police officers, the Oregon State Police and the Multnomah County Sheriff's Office are also investigating this man because of his notoriety as a dealer in stolen property. All of these police agencies have received information from informants that Max Sagner deals continually in stolen property.

"I am writing this affidavit to request a search warrant of the home located at 14501 NE Halsey in order to look for the camera and Strobe light. In addition to that, I am requesting this court for permission to photograph any other property that I see during the search that I suspect may have been stolen, and I request permission to look at all property in order to get the serial numbers from the property. I want to use these photos and serial numbers to continue my investigation of this individual.

"Based on the above information, I have probable cause to believe that the above described Bell and Howell 8 MM Soundomatic Camera and Strobe light camera attachment are concealed in the premises situated at 14501 NE Halsey, in the City of Portland, said County and State, and I also have probable cause to believe that other stolen property is located in the same house.

"* * * * *."

which is suspected to have been stolen, as well as to look at all property in order to obtain serial numbers therefrom."

Armed with this search warrant, a number of police officers (apparently five or six) went to defendants' home to execute the warrant. What went on at the home is not completely clear, but apparently the officers, after informing Mrs. Sagner of her rights and telling her that their purpose was to search for the camera and strobe light, split up into various teams to search. As they proceeded the officers encountered a number of items which they suspected might be stolen. Some of these items were in the open and others were inside drawers and in various other places. Pursuant to the apparent authority of the search warrant, those items were separated into groups for ease of photography, and serial numbers were taken when appropriate. Eventually the camera and strobe light were found. At that point the officers advised the assistant district attorney who was in charge of the case that a great deal of suspicious merchandise had been turned up in the course of the search. Apparently no searching activity went on between the time of that telephone call and the arrival of the assistant district attorney at the Sagner residence but an unspecified amount of searching was done after his arrival. Sometime during the course of the search the officers telephoned police headquarters to determine whether the serial numbers of some ten items which they had found matched those of stolen property. Of those ten items, approximately six appeared to have been stolen.[2] On that basis, and

---

[2] Apparently only one of the items introduced into evidence against the defendants, a television set, was among those items whose serial numbers were checked.

also on the basis of the assistant district attorney's advice that there was no need to seek another search warrant, the officers seized a large quantity of items which they suspected were stolen.[9] Of this quantity, nine items were included in the indictments against the defendants. Two of those items were suppressed because they were found after the camera and strobe light, and a third item was not introduced into evidence for an undisclosed reason. It is from the order denying suppression of the remaining six items that defendants appeal.

Defendants' attack on this warrant is based on the contention that it is a general warrant, i.e., a warrant which lacks the specificity required by the Fourth Amendment to the United States Constitution and Art I, § 9 of the Oregon Constitution.[10] However, we need not reach that issue because we have concluded from an examination of the affidavit in this case that there was no probable cause upon which the magistrate could have issued the warrant which he did.

Initially, we believe that the affidavit was sufficient to justify the issuance of a warrant to search for the camera and strobe light. In the affidavit affiant relied on information given him by the person who had stolen the camera and strobe light and had sold them to defendant Max Sagner. The informant had given affiant the check with which he had been paid by defendant for the camera and strobe light, and he

---

[9] The police inventory of the items seized covers 23 pages. A number of the entries on the inventory refer to multiple items.

[10] *See*, e.g., Stanley v. Georgia, 394 US 557, 89 S Ct 1243, 22 L Ed 2d 542 (1969) (Stewart, J., concurring); Stanford v. Texas, 379 US 476, 85 S Ct 506, 13 L Ed 2d 431 (1965).

had told affiant that defendant had expressed to him his plans to use the equipment in his home to photograph his baby. The existence of the two items was corroborated by the statements to affiant by the person from whom they had been stolen. All of this information was before the magistrate and we believe that this justified his conclusion that there was probable cause that those two pieces of photographic equipment were at the Sagner residence. *Spinelli v. United States*, 393 US 410, 89 S Ct 584, 21 L Ed 2d 637 (1969); *Aguilar v. Texas*, 378 US 108, 84 S Ct 1509, 12 L Ed 2d 723 (1964). *See State v. Spicer*, 254 Or 68, 456 P2d 965 (1969); *State v. Flores*, 251 Or 628, 447 P2d 387 (1968).

However, in light of the foregoing cases, we do not believe that the affidavit disclosed facts from which the magistrate could have found probable cause that additional stolen property was in defendants' home. In addition to the information regarding the camera and the strobe light, discussed above, the affidavit discloses the following: (1) The informant who provided the information concerning the camera and strobe light told affiant that defendant Max Sagner had, approximately two weeks earlier, requested that he steal four tires and a television set for him (apparently this was never done); (2) an identified police officer told affiant that some 13 months prior to the execution of the affidavit defendant Max Sagner told him that he dealt in stolen property and that he would continue to do so because the police could do nothing about it; (3) various unnamed police personnel had told affiant over an unspecified period of time that defendant Max Sagner had a reputation for dealing in stolen property and that some of them had recently investigated Sagner for such activities; and (4) that other unnamed officers told affiant that defendant

Max Sagner's place of business was continually frequented by known burglars and thieves.

■ In assessing the adequacy of these facts to support the issuance of the search warrant for additional property suspected of having been stolen we are confined to the "four corners" of the affidavit. The hindsight of success cannot weigh in the equation, nor can matters which were in the officers' knowledge but were not put before the magistrate. *Aguilar v. Texas,* supra; *State v. Dunavant,* 250 Or 570, 444 P2d 1 (1968). We do not believe that all of the facts put before the magistrate, viewed in the best possible light, could establish probable cause that defendant was at that time concealing stolen property (except the camera and strobe light) at his *home.*

■ It is fundamental that before a search warrant can issue, the judicial officer must be supplied with sufficient information to support an independent judgment that probable cause exists for the warrant. *Spinelli v. United States,* supra; *Aguilar v. Texas,* supra; *Giordenello v. United States,* 357 US 480, 78 S Ct 1245, 2 L Ed 2d 1503 (1958).

■ A large portion of the statements in the affidavit concerned defendant Max Sagner's alleged reputation for dealing in stolen property. *Spinelli v. United States,* supra, contains a clear statement that such assertions are to be given no weight by a magistrate in deciding whether to issue a warrant. An unsuccessful effort was made to alter that rule in *United States v. Harris,* 403 US 573, 91 S Ct 2075, 29 L Ed 2d 723 (1971),[⑨] but it is beyond question that such assertions

---

[⑨] Only Justices Black and Blackmun concurred in that portion of Chief Justice Burger's opinion which repudiated *Spinelli's* statement on reputation allegations. Justices Stewart and White joined in other portions of the opinion, while the remaining four Justices dissented from the opinion as a whole.

are never enough in themselves to establish probable cause, because to hold otherwise would violate the basic principle that the magistrate must make his own conclusions and not defer to rumor.

■ The statements concerning (1) the defendant's assertion of some 13 months earlier that he was dealing and would continue to deal in stolen property and (2) defendant's recent purchase of the camera and strobe light and his request that the thief steal more things for him, taken together, might make one believe that defendant was dealing in stolen property. However, that is not enough to support the issuance of a warrant to search specified premises. The affidavit must also disclose facts showing that the crime is being committed on the specific premises. *Dumbra v. United States,* 268 US 435, 45 S Ct 546, 69 L Ed 1032 (1925); *State v. Ingram,* 251 Or 324, 445 P2d 503 (1968); *State v. Koberstein,* 8 Or App 307, 493 P2d 176, Sup Ct *review denied* (1972). A mere affirmance of suspicion or belief is not enough. *Nathanson v. United States,* 290 US 41, 54 S Ct 11, 78 L Ed 159 (1933). The general assertions referred to above do not support the inference that stolen property was on defendants' premises at the time the warrant was requested, or ever. No one reported having ever seen stolen property on defendants' premises at any time, nor had defendants ever stated that it was there. No facts in the affidavit could lead to even a suspicion that any property, except the camera and strobe light, were in defendants' home. Indeed, to the extent that the facts in the affidavit support any inference at all, the logical inference would be that any stolen property would be at defendants' place of business, since it is there that the affidavit stated that "known burglars and thieves" abounded.

■■ There is no doubt that cases of this type turn on their own facts. *State v. Brown,* 1 Or App 322, 461 P2d 836 (1969), Sup Ct *review denied* (1970). There is also no question that affidavits for search warrants should not be read in an overly-technical manner, *United States v. Ventresca,* 380 US 102, 85 S Ct 741, 13 L Ed 2d 684 (1965), and that the benefit of the doubt should be given the magistrate's finding of probable cause in close cases. However, we do not view this as a close case. We have been directed to no case, nor have we found any through our own research, which has sustained a warrant based on an affidavit such as that presented in this case.

■■ Defendant urges that the entire warrant was tainted by the general authorization language. However, despite the fact that we have held that that authorization was unjustified, we are persuaded by the reasoning of the California Supreme Court that it does not follow that the warrant is invalid as a whole. *Aday v. Superior Court,* 55 Cal 2d 789, 362 P2d 47, 13 Cal Rptr 415 (1961).℗ We hold that the warrant was valid insofar as it authorized the search for and seizure of the camera and strobe light.

In addition to the camera and the strobe light, four other items seized during the search in question were introduced into evidence at trial: an electric typewriter, a photostatic copier, a color television set, and a rifle. As noted previously, no warrant was sought or obtained to seize these items. Instead, the

---

℗ Both this case and United States v. Ketterman, 276 A2d 243 (CADC 1971), caution that invalid portions of a warrant will not be considered severable in all circumstances. If a warrant is essentially general, but meets the requirement of particularity as to minor items, "[s]uch an abuse of the warrant procedure, of course, could not be tolerated." Aday v. Superior Court, 55 Cal 2d 789, 797, 13 Cal Rptr 415, 362 P2d 47 (1961).

officers merely seized these and many other items which they suspected were stolen, largely on the advice of the assistant district attorney who was on the scene.

At the hearing on defendants' motion to suppress, the judge found as a matter of fact that all four of those items were encountered prior to the finding of the camera and strobe light. While the record is somewhat confused on that point, we believe that that finding is supported, and we therefore adhere to it. *Ball v. Gladden*, 250 Or 485, 443 P2d 621 (1968). The court further found that each of the items was found in the course of the search for the camera and strobe light, that each was in plain sight as the officers made their search, and that the items were therefore subject to seizure without a warrant pursuant to the "plain view" doctrine.[2]

The legal principle underlying the "plain view" doctrine is simply stated—a police officer is entitled to seize evidence of a crime which he recognizes as such, provided that he has a right to be in the place where he is when he observes the evidence. *Harris v. United States*, 390 US 234, 88 S Ct 992, 19 L Ed 2d 1067 (1968); *State v. Johnson*, 232 Or 118, 374 P2d 481 (1962); *State v. Alexander*, 9 Or App 42, 495 P2d 51, Sup Ct *review denied* (1972). The difficulty lies in applying the principle to the facts of a particular case, particularly a case whose record is very confusing.

We have already held that the search warrant was valid insofar as it authorized the officers to

---

[2] The trial court bolstered its holding by reference to the authority granted by the warrant to photograph and take serial numbers. However, since we have found that portion of the warrant to be invalid, the court's ruling must stand or fall on the "plain view" doctrine, independent of the invalid portions of the warrant.

search for the camera and strobe light. Thus, the officers were rightfully in defendants' home. But a warrant does not simply provide a means of entry, after which the officers are entitled to engage in a general exploratory search. A warrant authorizes a search only in a manner which is necessary to find those items specified in the warrant. *State v. Hawkins,* 255 Or 39, 463 P2d 858 (1970). Thus, we must consider whether the additional items were encountered in the course of a search which was properly limited in scope. As noted previously, the trial judge found that the items were found in the course of a legitimate search for the camera and strobe light. This finding is supported by the record. *Ball v. Gladden,* supra. However, this is not sufficient to justify seizure. In addition, we must consider whether the items seized were obvious evidence of crime. That is, assuming that the items were legitimately encountered, was it evident that they were stolen goods? All four items were encountered in places where they might normally be expected to be found in a house. The television set was found on a television stand at the foot of a bed, the typewriter and photostatic copier were found in the room which defendants utilized as their office, and the rifle was found in a bedroom closet. Thus, this was not a case like *State v. Cloman,* 254 Or 1, 456 P2d 67 (1969), and *State v. Temple,* 7 Or App 91, 488 P2d 1380, Sup Ct *review denied* (1971), *cert denied* 406 US 973 (1972), where the items found (in those cases, large quantities of copper wire) were not usually possessed by citizens, or a case where the location where they were found or prior knowledge of the officers gave rise to suspicion of the items. *See State v. Redeman,* 9 Or App 329, 496 P2d 230 (1972). Although there was nothing inherently

suspicious about three of the items, the typewriter, the photostatic copier and the rifle, the television set was different. The officer who walked by this set at the foot of the bed noticed that the serial number on the back of the set had been scratched off. This obliterated serial number, coupled with the fact that television sets are known to be frequent subjects of thefts and that the set was in the home of one sworn to be harboring stolen property, was a sufficiently strong circumstance to warrant a cautious man to believe that this was evidence of crime. *State v. Keith,* 2 Or App 133, 465 P2d 724, Sup Ct *review denied* (1970) ; *State v. Temple,* supra. We therefore hold that the seizure of the television set was proper.

 As to the remaining three items which were not inherently suspicious, we must look to the circumstances with which the officers were surrounded to consider whether the combination of those factors was sufficient to establish probable cause to seize those items without a warrant.

Sometime during the course of the evening defendant Rita Sagner appears to have made a statement to the police indicating her knowledge that some of the property in the house was stolen, although the nature of that statement is not clear. It is also unclear when the statement was made and whether any of the officers who were actively engaged in searching were aware of any such statement until after the items in question were found.

In addition, we consider the fact that defendant Max Sagner had a reputation with at least some of the searching officers for dealing in stolen goods. Was this fact sufficient to give the searching officers probable cause to seize otherwise innocuous looking items?

Under the authority of *State v. Cloman,* supra, and *State v. Temple,* supra, we conclude that it was not. In *State v. Temple,* supra, 7 Or App at 96, we stated the following:

> "*Cloman* explicitly cautions that knowledge of a person's prior criminal activity can never, standing alone, furnish probable cause. Otherwise, 'anyone with a previous criminal record could be arrested at will.' Beck v. Ohio, 379 US 89, 85 S Ct 223, 13 L Ed 2d 142 (1964), quoted in *Cloman,* 254 Or at 11. Also, at least by implication, *Cloman* cautions that the police must have a reasonable foundation for their belief that certain goods are stolen. * * *"

The seizure of the items in controversy was not done pursuant to warrant. Therefore the burden is on the state to establish its validity, *State v. Elkins,* 245 Or 279, 422 P2d 250 (1966), by "clear and convincing evidence." *State v. Douglas,* 260 Or 60, 68, 488 P2d 1366 (1971), *cert denied* 406 US 974 (1972). We hold that this burden was not met as to the electric typewriter, the photostatic copier, and the rifle.

We recognize that there might be circumstances where an application for another warrant would be impossible or impractical and, therefore, the exigencies justify such a search and seizure, *State v. Hawkins,* 255 Or 39, 463 P2d 858 (1970), but such circumstances cannot be said to be present in this case, where the atmosphere was cordial and there were several officers present in the home. There is no apparent reason, except the incorrect advice of the assistant district attorney, why one of those officers could not have sought a warrant while the others remained on

the premises. *Compare, Warden v. Hayden,* 387 US 294, 87 S Ct 1642, 18 L Ed 2d 782 (1967).

We conclude that only the camera and strobe light attachment and television were properly seized, and that the remaining three items which were introduced into evidence should have been suppressed. The judgment of the trial court is reversed and the case is remanded to the trial court for a new trial.