Argued and submitted August 9, affirmed November 6, reconsideration denied December 20, 1985, petition for review denied January 22, 1986 (300 Or 477)

## STATE OF OREGON,
*Respondent,*

*v.*

## GERALD RAY GRACE,
*Appellant.*

(10-84-02778, 10-84-02842, 10-84-02880,
10-84-02881, 10-84-02882, 10-84-02922;
CA A33590 (Control), A33591, A33592,
A33593, A33594, A33595)
(Cases Consolidated)

708 P2d 1193

Sally L. Avera, Deputy Public Defender, Salem, argued the

cause for appellant. With her on the brief was Gary D. Babcock, Public Defender, Salem.

Jonathan H. Fussner, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Solicitor General, Salem.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

WARREN, J.

## WARREN, J.

Defendant was convicted on four counts of burglary in the first degree, ORS 164.225, and two counts of burglary in the second degree, ORS 164.215. On appeal he assigns as error the trial court's denial of his motion to suppress items seized during a search pursuant to a warrant which were not named in the warrant. He also argues that ORS 164.235(2), defining "burglar tool" as "any * * * tool, instrument or other article * * * designed * * * for committing or facilitating a forcible entry into premises," is unconstitutionally vague.[1]

Defendant became a burglary suspect when his 14-year-old daughter went to the Springfield Police Department on April 7, 1984, to report that her father had been entering Pad-N-Lock self-storage units in Springfield and stealing their contents since at least December, 1983. She stated that she and her brother had served as lookouts and that defendant had often used a homemade lock pick to enter the units. She reported that defendant took the stolen property to his residence, where he stored it in a bedroom and the attic, and that he disposed of the property by means of continuous sales out of the living room of his residence and at another residence.

She stated that she most recently had been at defendant's house two days earlier and at that time had observed a wicker fish which she knew to be stolen from the Pad-N-Lock facility. Three weeks earlier she had observed a stolen collection of miniature bulldogs at defendant's residence. She also provided the police with a list of other stolen items which she previously had seen in the house, but the current whereabouts of which she did not know. The list included stereos, furniture, clothing, kitchen utensils, household goods and personal effects. The officer discovered reports of numerous thefts and burglaries at the Pad-N-Lock facility in the previous year, some of which appeared to have involved use of a lock pick. Two reports listed a wicker fish and a bulldog collection as

---

[1] ORS 164.235(2) provides:

" 'Burglar tool' means an acetylene torch, electric arc, burning bar, thermal lance, oxygen lance or other similar device capable of burning through steel, concrete or other solid material, or nitroglycerine, dynamite, gunpowder or any other explosive, tool, instrument or other article adapted, designed or commonly used for committing or facilitating a forcible entry into premises or theft by a physical taking."

missing. Many items listed as stolen were similar to items in the list provided by defendant's daughter.

The officer submitted an affidavit for a search warrant relating the above information. He attached the list provided by defendant's daughter and the police reports of theft and burglary to the affidavit. The district court issued a warrant authorizing a search of defendant's home, vehicle and person for a homemade lock pick, the items in the list and the reports (which included the wicker fish and the bulldog collection), items of identification and "fruits of the crimes of burglary and theft."

Officers executed the search warrant on April 8, 1984. After arriving at defendant's residence, an officer interviewed a woman who lived there. She told the officer that defendant had brought a good deal of property into the house, which he said he had obtained from Goodwill boxes. She said that defendant would first discard photographs and documents bearing names or identifying marks and would then store the property in the attic and a bedroom. The bedroom door had a padlock, which was not locked at that time. The attic and bedroom were crammed with furniture, household goods and personal effects, much of which was stored in boxes and trunks. In one room the boxes and furniture were stacked almost to the ceiling. The items were the sort of goods which a person would store in a self-storage facility and were packed for moving. The officers observed many of typical household items, such as dishes, kitchen appliances and furniture. In the course of the search the officers discovered the bulldog collection and the wicker fish, but the record does not reveal at what point in the search these items were found. The officers did not find the lock pick, but defendant's housemate found it in defendant's car and turned it over to the police on the day after the search.

The officers decided to seize all of the property suspected to be stolen. They seized everything in the residence except items identified by defendant's housemate as belonging to her and an acquaintance of hers and which she identified as having been in defendant's possession for some period of time. In all, they removed 17 pickup truck loads of items from the residence.

Defendant moved to suppress all evidence seized

during the search on the grounds that the warrant was not based on probable cause and the scope of the search exceeded that authorized by the warrant. The trial court ruled that, when the court issued the warrant, it had probable cause to believe that the only stolen items then present in the residence were the ones which defendant's daughter had recently seen there, *i.e.*, the wicker fish and the bulldog collection. The court denied the motion nevertheless, ruling that all the items were validly seized, because the officers had probable cause to believe that they were evidence of or the fruits of crime which were inadvertently discovered during a lawful search.[2]

On appeal, defendant claims that the trial court correctly ruled that the warrant was valid only as to the lock pick, bulldog collection and wicker fish and concedes that, because the lock pick was not discovered on August 8, he cannot complain that the search continued beyond its lawful purpose. He also concedes that evidence or fruits of a crime inadvertently discovered during the lawful search for the three items would be subject to seizure under ORS 133.585 but contends that the officers did not have probable cause to believe that all the seized items were stolen.[3]

---

[2] ORS 133.585 provides, in pertinent part:

"* * * If in the course of the search the officer discovers things, not specified in the warrant, which he has probable cause to believe to be subject to seizure under ORS 133.535 which he did not have probable cause to expect to find, he shall also take possession of the things discovered."

ORS 133.535 provides:

"The following are subject to search and seizure under ORS 133.525 to 133.703:

"(1) Evidence of or information concerning the commission of a criminal offense;

"(2) Contraband, the fruits of crime, or things otherwise criminally possessed;

"(3) Property that has been used, or is possessed for the purpose of being used, to commit or conceal the commission of an offense; and

"(4) A person for whose arrest there is probable cause or who is unlawfully held in concealment."

[3] The state contends that the search warrant was valid as to all items listed therein. It does state that some of the items seized were not included in the warrant so, even under the state's theory, we must decide whether some items were lawfully seized under ORS 133.585. Accordingly, we need not decide whether anything more than the three items discussed could lawfully be searched for and seized under the warrant.

Defendant relies on *State v. Sagner,* 12 Or App 459, 506 P2d 510, *rev den* (1973), and *State v. Callaghan,* 33 Or App 49, 576 P2d 14, *rev den* 284 Or 1 (1978). In *Sagner,* police searched the defendant's home for a camera and strobe light pursuant to a warrant which properly authorized a search for those items. During the search, the police also seized four other items which they suspected to be stolen and which were introduced into evidence. The issue was whether the items which were seized in plain view during a lawful search were "obvious evidence of crime." 12 Or App at 473. We noted that the four items were encountered in places where they would ordinarily be found in a house and that nothing was inherently suspicious about three of the items. The fourth, a television, had an obliterated serial number. We held that that obliterated serial number on a common subject of theft was "a sufficiently strong circumstance to warrant a cautious man to believe that this was evidence of a crime," 12 Or App at 474, and upheld its seizure. As for the other three items, the court looked "to the circumstances with which the officers were surrounded to consider whether the combination of those factors was sufficient to establish probable cause to seize those items without a warrant," 12 Or App at 474, and suppressed them.

*State v. Callaghan, supra,* applied *Sagner* to a factual situation in which the defendant had ordered new goods from 58 companies, for which he had not paid and which he was selling at below wholesale from his house. A search warrant listed approximately 180 items, and the officers seized 543. The opinion upheld the seizure of the items which were not specifically described in the search warrant. The officers established probable cause for seizing them by following one of seven methods to tie it to the defendant's scheme. One of the methods was to verify shipment of, and nonpayment for, the items with the seller. This court held that all of the items, when "coupled with the additional information, fell within the pattern of illegality upon which probable cause was based initially, and upon which the search warrant was issued." 33 Or App at 55.

Defendant contends that the officers lacked probable cause to seize items not listed in the warrant, because they failed to have the victims identify the items. In evaluating the legality of the seizure of items not named in a warrant we do

not require that any particular procedure be followed; rather, we examine "the circumstances with which the officers were surrounded * * *." *State v. Sagner, supra,* 12 Or App at 474.

When the officers executed the warrant in this case, they had reliable information that defendant had stolen a large amount of personal belongings which he had stored in a bedroom and the attic of his residence. That information was corroborated by the woman living at his house. We conclude that the information which the officers had, when combined with the nature and condition of the property which they encountered, gave them probable cause to believe that all the seized property was stolen. In those circumstances, the officers did not need to verify with the victims that the items were stolen. The trial court properly denied defendant's motion to suppress.

■    Defendant's second assignment argues that ORS 164.235(2), which defines "burglar tool" as any "article * * * *designed* * * * for committing or facilitating a forcible entry into premises" (emphasis supplied) is unconstitutionally vague. He relies on *State v. Graves,* 299 Or 189, 700 P2d 244 (1985), in which the Supreme Court held that that part of ORS 164.235(2) which defines a burglar tool as any article *"commonly used* for committing or facilitating a forcible entry into premises"* (emphasis supplied) is unconstitutionally vague.[4] Defendant's argument is not well taken. The term "designed" adequately informs potential defendants, prosecutors, judges and jurors of what conduct will receive enhanced punishment as burglary in the first degree. Unlike the term "commonly used," "designed" does refer to a specific article and not to the practices of other burglars. *See* 299 Or at 196-97.

Affirmed.

---

[4] *State v. Graves, supra,* did not consider the term "designed" in ORS 164.235(2). 299 Or at 194. Neither did *State v. Sells,* 299 Or 198, 201, 702 P2d 68 (1985), decided the same day. *State v. Warner,* 298 Or 640, 696 P2d 1052 (1985), which considered the meaning of the statutory term "adapted," noted that the "class of objects designed for [committing or facilitating forcible entries] is not large [and] [p]resumably, professional locksmith tools would fall into this category." 298 Or at 647.