Argued and submitted March 31, reversed and remanded for trial May 27, 1987

# STATE OF OREGON,
*Appellant,*

*v.*

# ARRILLA LORRAINE GRAHAM,
*Respondent.*

(86-469; CA A41652)

737 P2d 642

Thomas H. Denney, Assistant Attorney General, Salem, argued the cause for appellant. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Virgil E. Dugger, Portland, argued the cause and filed the brief for respondent.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

ROSSMAN, J.

**ROSSMAN, J..**

Defendant was charged with unlawful possession of a controlled substance, Demerol, in violation of ORS 475.992(4). The trial court allowed defendant's motion to suppress evidence, and the state appeals. We reverse.

On the afternoon of August 8, 1985, state police and county sheriff's officers executed a search warrant at defendant's residence. The warrant authorized a search of the residence for

> "Marijuana in various forms, drug paraphernalia, items of identification like drivers licenses, credit cards, rent receipts, utility bills, personalized checks, business records, ledgers, telephone tolls, U.S. Currency, correspondence, address books and photographs."[1]

When the officers entered the house, they found defendant asleep in a downstairs bedroom. She explained that she was a nurse and had just finished her shift. When she refused to get out of bed, she was removed from the bedroom to the upstairs living room with the other household members who were present during the search.

In the course of the search that followed, the police found a cardboard box in a cabinet above the bed in defendant's room. It contained a number of items which the police described as "quite a bit of pharmaceutical-type narcotics and drugs." One officer interviewed defendant about the items found in the box. According to his testimony:

> "A. She told me that she had been a nurse at Good Samaritan Hospital in Portland for the last thirty years and for the past twenty of those thirty years she had made a habit of bringing home drugs for herself to try. She said she gets the drugs by taking them from patients who have had their prescriptions changed and no longer take them, or if that patient leaves the hospital and leaves prescriptions behind, she would sometimes take those.
>
> "I asked her if it was hospital policy that unused prescriptions be destroyed and she told me that yes, that was a policy,

---

[1] Defendant did not attack the scope of the warrant itself. Although the subject of the warrant was defendant's son, who was suspected of manufacturing marijuana, there is nothing in the warrant to inform the officers who executed it of that fact, and the record does not reveal whether the two officers involved in the actual seizure of the Demerol knew which household member was suspected of illegal activity.

that she was supposed to flush them down the toilet. She admitted to me that she knew she was breaking the policy but that if the hospital found out about this that she would not feel guilty about doing it. She might be a little embarrassed.

"She went on to tell me that she took the drugs from the hospital so that she could try them out and see if it was something that helped her particular ailment and if the drug did help, then she would go and obtain a prescription from a physician for them."

The officers seized the items in the box, including a vial of liquid labeled "Demerol HCl" which was the subject of the motion to suppress. It did not have a prescription label affixed to it. The officers testified that they seized the Demerol, because they believed that it was a controlled substance.

■ The court based its decision to suppress on what the judge termed "the interests of justice," stating that it was unfair that the search was conducted in August, 1985, and that no action was taken until defendant was indicted on May 22, 1986. He also stated that the search was overbroad.[2] The state first argues that the "interests of justice" reasoning does not support the suppression. We agree. A lapse between the time when the seizure occurred and the time of the indictment does not make the evidence inadmissible.

■ The state also contends that the search was not overbroad. A search incident to a warrant is limited in scope to "only such as is authorized by the warrant and is reasonably necessary to discover the persons or things specified therein." ORS 133.585. Here, the warrant authorized a search of the residence for marijuana, drug paraphernalia and various items of identification and currency. Because the items could be found in a box in a bedroom on a shelf or in a cabinet, the discovery of the Demerol was within the scope of the authorized search.[3]

■ ORS 133.585 provides that if, in the course of a search

---

[2] The trial judge also may have been concerned that the search spanned a period of nearly three and a half hours. The length of the search is not at issue here, because the question is whether seizure of the Demerol, which occurred relatively early in the search, was proper. Defendant does not contend that the search had been unreasonably long before the officers' discovery of the Demerol.

[3] The officer testified that he was looking for items of identification and marijuana in the box when he discovered the vial of Demerol and that marijuana is "oftentimes hidden in places like that."

pursuant to a warrant, "the officer discovers things, not specified in the warrant, which the officer has probable cause to believe to be subject to seizure under ORS 133.535 which the officer did not have probable cause to expect to find, the officer shall also take possession of the things discovered." ORS 133.535 authorizes seizure of, among other things:

"(1)  Evidence of or information concerning the commission of a criminal offense;

"(2)  Contraband, the fruits of crime, or things otherwise criminally possessed."

In *State v. Owens*, 302 Or 196, 204, 729 P2d 524 (1986), the Supreme Court stated that, in Oregon,

"[p]robable cause [to search and seize] * * * has both a subjective and an objective component. An officer must subjectively believe * * * that a person or thing is subject to seizure, and this belief must be objectively reasonable in the circumstances."

Under the circumstances that existed at the time of the search, we conclude that the officers had probable cause to believe that the Demerol was subject to seizure under ORS 133.535. The officers were engaged in a search incident to a warrant and were searching in a manner consistent with the warrant. There is no suggestion that, when the warrant was issued, the officers had probable cause to expect to find evidence of illegal possession of drugs other than marijuana. When the first officer came upon the box containing the Demerol, he saw that many of the drugs in the box were prescribed to people other than defendant and that many, including the Demerol, had no prescription on them at all. He showed the boxful of drugs to another officer, who asked defendant about them. Her response, that she was a nurse who often brought home unused portions of prescription drugs left behind by patients who had had their prescriptions changed or who had left the hospital, did nothing to diminish their suspicion that defendant did not possess the drugs legally. The officers testified that, on the basis of their training and experience, they believed that Demerol was a controlled substance and that it and the other drugs seized with it were "apparent contraband."[4]

---

[4] Both officers testified that they had training or experience relating to the identi-

The officers subjectively believed that the Demerol was a controlled substance and, under the circumstances, the belief that it was an illegally possessed controlled substance was objectively reasonable. Accordingly, they had probable cause to seize it. *See State v. Ness,* 54 Or App 530, 635 P2d 1025 (1981), *affirmed on other grounds* 294 Or 8, 653 P2d 548 (1982); *State v. Sagner,* 12 Or App 459, 506 P2d 510, *rev den* (1973). The motion to suppress was erroneously granted.

Reversed and remanded for trial.

---

fication of specific items as contraband. The officer who initially discovered the Demerol was assigned to the Clackamas County Special Investigations Unit, and he primarily investigated cases involving the use and possession of controlled substances. Although neither officer knew the exact chemical composition of Demerol, both believed that it was a controlled substance.