Argued April 9 before Department 2, reargued September 8, 1969,
reversed and remanded for a new trial January 21, 1970

STATE OF OREGON, *Respondent, v.*
SHANNON HAWKINS, *Appellant.*
463 P. 2d 858

*Howard R. Lonergan,* Portland, argued and reargued the cause and filed briefs for appellant.

*Billy L. Williamson,* Deputy District Attorney, Portland, argued and reargued the cause for respondent. With him on the brief was George Van Hoomissen, District Attorney, Portland.

Before PERRY, Chief Justice, and McALLISTER, SLOAN, O'CONNELL, GOODWIN,* DENECKE and HOLMAN, Justices.

HOLMAN, J.

This is an appeal from a conviction of manslaughter by abortion. Defendant contends she was convicted by the use of evidence secured through an illegal search and seizure.

The police secured a search warrant to search the defendant's home for certain instruments and drugs of the kind usually used in performing abortions. During the search, two books, which were diaries, were discovered in a drawer. One was opened for the pur-

---

* Goodwin, J., resigned December 19, 1969.

pose of seeing whether it was hollowed out and whether drugs were concealed therein. While so doing, the officer inadvertently noticed at the place where he opened the book the following notation under the date of October 7, 1966:

> "Doctor Jack (and I help) gave Dawn an AB at my hse."

The officer concluded that "AB" might well be an abbreviation for "abortion." He then called a superior to see whether he could look through the second diary for a similar memorandum on the date of the alleged commission of the crime under investigation, and was told to go ahead. The following notation was found recorded on the appropriate date:

> "Jack, Dave, and I give AB on Memory."

This latter memorandum was introduced in evidence. Defendant made an appropriate motion for its suppression, which was denied. The defendant contends that because the warrant did not authorize the police to search for and to seize information from defendant's diary, its introduction in evidence was error.

■■ The question presented involves the permissible scope of searches and seizures pursuant to a warrant. A warrant authorizes a search only in a manner which is necessary to find those items specified in the warrant. There was no likelihood that the items specified in the warrant in this case would be found by reading a diary. Therefore, a reading search of the diary containing the memorandum which was introduced in evidence was a search in a manner not authorized by the warrant.

It should be made clear that we are not here talking about a situation where an officer, while searching in a place and manner justified by the items listed

in the warrant, inadvertently stumbles upon obvious evidence of the crime pursuant to which the warrant was issued. We are considering a situation in which there was an additional step. We are presuming that the officer was searching in a place and manner justified by the warrant when he inadvertently discovered the entry of October 7. However, this entry is not the one in question. After discovering the entry of October 7, the officer came to the conclusion that "AB" might be the abbreviation for "abortion," and that if he was correct in this assumption, there also might be a similar entry under the date that the crime in question was claimed to have been committed. Acting upon these assumptions, he thereupon proceeded to read the other diary to determine whether such an entry did, in fact, exist.

It was a magistrate's, and not an officer's, duty to determine whether an invasion of this additional area of defendant's privacy was justified by the information inadvertently discovered in the first diary. In effect, the officer decided there was probable cause to read the second diary. No magistrate made any such independent determination. We, therefore, hold that the seizure of defendant's second diary was unauthorized.

There may be circumstances where an application for another warrant is impossible or impractical and, therefore, the exigencies justify such a search and seizure, but there is no claim of any such circumstances here. Cf. *Warden v. Hayden*, 387 US 294, 87 S Ct. 1642, 18 LEd2d 782 (1967) (hot pursuit). While the defendant appeared upon the scene during the search, the diaries had already been seized. There is no contention that it would have been impractical to transmit by telephone the information to other officers

who could have applied for the warrant while the balance of the search continued.

The case of *Stanley v. Georgia*, 394 US 557, 89 S Ct. 1243, 22 LEd2d 542 (1969), discloses a situation similar but not identical to the one at hand. In *Stanley* the officers possessed a warrant to search defendant's home for evidence of bookmaking. During the search, they discovered a reel of motion picture film in a desk drawer in the room occupied by defendant. They proceeded to show the film with a projector and screen which were on the premises. After reviewing the film, the police decided it was obscene and therefore arrested defendant for its possession, of which crime he was subsequently convicted. Six members of the court held that the statute purporting to outlaw the possession of obscene matter was unconstitutional because it violated the First and Fourteenth Amendments to the Federal Constitution. However, Mr. Justice Stewart wrote an opinion, concurred in by Justices Brennan and White, which held that the film was seized in violation of the Fourth Amendment. Mr. Justice Stewart used the following language which, to us, seems appropriate to our present case:

"There can be no doubt, therefore, that the agents were lawfully present in the appellant's house, lawfully authorized to search for any and all of the items specified in the warrant, and lawfully empowered to seize any such items they might find. It follows, therefore, that the agents were acting within the authority of the warrant when they proceeded to the appellant's upstairs bedroom and pulled open the drawers of his desk. But when they found in one of those drawers not gambling material but moving picture films, the warrant gave them no authority to seize the films.

"The controlling constitutional principle was

stated in two sentences by this Court more than 40 years ago:

" 'The requirement that warrants shall particularly describe the things to be seized makes general searches under them impossible and prevents the seizure of one thing under a warrant describing another. As to what is to be taken, nothing is left to the discretion of the officer executing the warrant.' Marron v. United States, 275 US 192, 196, 72 L Ed 231, 237, 48 S Ct 74.

"This is not a case where agents in the course of a lawful search came upon contraband, criminal activity, or criminal evidence in plain view. For the record makes clear that the contents of the films could not be determined by mere inspection

\* \* \*.

"\* \* \* This record presents a bald violation of that basic constitutional rule [the rule against exploratory searches]. To condone what happened here is to invite a government official to use a seemingly precise and legal warrant only as a ticket to get into a man's home, and, once inside, to launch forth upon unconfined searches and indiscriminate seizures as if armed with all the unbridled and illegal power of a general warrant." (Footnotes omitted.) 394 U.S. at 570.

The only difference between the situation in *Stanley* and the present case is that the evidence which was seized in the present case was evidence of the crime for which the search was being conducted; while in *Stanley,* the evidence seized was evidence of an entirely different crime than that which instigated the search. We believe the distinction to be insufficient to make the language in *Stanley* inappropriate to our use. The relevant point in both cases is that there was an invasion of an additional area of privacy not authorized by the warrant.

■ Because of the error previously discussed, the case must be sent back to the trial court for a new trial unless there is another defect which is fatal to the prosecution. Defendant urges that, at most, she aided and abetted another who was exempt from the criminal statute because he had been granted a physician's license and was subject to the Medical Practice Act, ORS ch 677. She claims that if he cannot be guilty, neither can she. *State of Oregon v. Buck*, 200 Or 87, 262 P2d 495 (1953), decided that a physician can be subject to the penalties of the criminal act. Her argument is not well taken.

■■ She also contends that if the physician whom she assisted complied with the provision for legal abortions as laid down by the Medical Practice Act, ORS 677.190(2), neither he nor she can be guilty, and, therefore, it is the state's duty to negative in the indictment and by proof that the abortion was not performed in conformance with the Act. Unless a person is charged as a physician in the indictment (not the case here), the fact that the abortion was performed under the provisions of the Act is a matter of defense. *State v. Elliott*, 234 Or 522, 525-526, 383 P2d 382 (1963).

There are other claims of error concerning the admissibility of evidence, instructions, and the conduct of counsel. There is no necessity to pass upon these questions, as they may not be relevant to a future trial. If there have been any such errors committed, presumably they have been pointed out with sufficient clarity by opposing counsel to be avoided upon retrial.

The judgment of the trial court is reversed and the case is remanded to the trial court for a new trial.