# STATE OF OREGON,
*Respondent,*

*v.*

# ROBERT JACK CHRISTOPHER,
*Appellant.*

## (No. C 79-12-34605, CA 17612)

639 P2d 642

Des Connall, Portland, argued the cause for appellant. With him on the brief was A. Michael Adler and Daniel C. Lorenz, Portland.

Thomas H. Denney, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and William F. Gary, Solicitor General, Salem.

Before Richardson, Presiding Judge, and Thornton and Van Hoomissen, Judges.

THORNTON, J.

## THORNTON, J.

Defendant appeals his conviction by a jury verdict of manslaughter. The conviction arose out of the shooting of a Portland police officer who was attempting to execute a search warrant for narcotics at defendant's residence. We affirm.

Defendant's first assignment of error concerns a denied motion to suppress. The motion sought suppression of evidence, in particular a shotgun, spent shotgun shells and a. 38 caliber revolver, obtained during a search of defendant's residence. A review of the underlying events of the search is necessary.

At about 8:00 p.m. on the evening of December 12, 1979, four Special Investigation Division (SID) officers obtained two search warrants for controlled substances at defendant's residence, which was a multi-resident three-story clubhouse, and at an adjoining motorcycle repair shop. The warrants authorized a search for: "heroin, amphetamine tabs, evidence of the crime of possession of controlled substances, items of identification." The grounds for issuance of these warrants are not contested on this appeal.

The officers went to defendant's residence just before 9 p.m. At about 9 p.m., they approached the front door and apparently announced themselves.[1] The officers then began to "ram" the front door until it opened. Upon entering the house, one of the officers was shot and killed by defendant. A short gun battle ensued, and the residence was "stormed" to remove the occupants. All this occurred within about 10 minutes. Nevertheless, there was doubt whether there were other individuals inside the house, so Special Emergency Reaction Team (SERT) officers were called in. Officers on the scene remained on the first floor of the residence while waiting for the SERT officers. The SERT officers fired tear gas into the house at about 11 p.m. At 1 a.m., December 13, the SERT officers came out of the

---

[1] There was a dispute whether the police officers announced themselves prior to entering the residence. Defendant's version was that they did not announce themselves and that he did not know of their identity when they entered through the front door.

house and indicated that it was secure and clear. By this time the house was surrounded by 30 to 40 officers, and the area around the house was cordoned off. Homicide investigation officers had arrived and, together with the original SID officers,[2] the team entered the residence at about 1:15 a.m. The officers seized the items which are the subjects of defendant's motion to suppress. The officers did not obtain a warrant authorizing a search for and seizure of evidence of the homicide.

After argument on the motion to suppress, the trial court denied it, noting that under *State v. Eacret,* 40 Or App 341, 595 P2d 490, *rev den* 287 Or 409 (1979), there is no general homicide exception to search warrant requirements in Oregon.[3] The court further found that no exigent circumstances were present, because the clubhouse and shop had been totally secured at the time the items subject to the motion to suppress were seized. The court found that the search warrants issued for the narcotics were valid and held:

> "Going in with a valid warrant, the narcotics detail had a right to search every portion of both premises for drugs and in that search it would have been impossible for them not to have found the contraband and weapons that were found in this case. All those that were in plain view and would have been found during their regular search for contraband.
>
> "* * * * *
>
> "The motion to suppress will be denied in each and every particular."

■■ It is well established that under proper circumstances the police may make a warrantless seizure of evidence which is in plain view. *Coolidge v. New Hampshire,* 403 US 443, 91 S Ct 2022, 29 L Ed 2d 564 (1971); *Harris v. United States,* 390 US 234, 88 S Ct 992, 19 L Ed 2d 1067 (1968); *State v. Keller,* 265 Or 622, 510 P2d 568 (1973). In the instant case, the officers executing the search warrants for narcotics were legitimately on the premises. They were in the process of executing the warrants when one of the

[2] The two search warrants for narcotics were directed to "any police officer of the State of Oregon." Any number of officers were entitled to participate in their execution. *State v. Ronniger,* 7 Or App 447, 454, 492 P2d 298 (1971).

[3] *See also, Mincey v. Arizona,* 437 US 385, 98 S Ct 2408, 57 L Ed 2d 290, 298-99 (1978).

officers was shot. When the officers obtained the warrants, they had no reason to believe evidence of a homicide would be on the premises. Rather, while executing the warrants, the officers themselves became the victims of a new crime, namely, assault with a deadly weapon, followed by a homicide, which occurred in the plain view of the officers and evidence of which was in plain view during the completion of the execution of the warrants on the morning of December 13. Under the circumstances, they were not required to stop their investigation until they could obtain a search warrant for evidence of homicide. The delay in continuing the execution of the warrants for a number of hours while the premises were being secured did not invalidate the eventual seizure of evidence. *See generally Michigan v.Tyler,* 436 US 499, 511, 98 S Ct 1942, 56 L Ed 2d 486 (1978); *State v. Anderson,* 42 Or App 29, 37, 599 P2d 1225, *rev den* 288 Or 1, *cert den* 446 US 920 (1979).

Defendant places considerable reliance on *State v. Hawkins,* 255 Or 39, 463 P2d 858 (1970), and *State v. Weaver,* 41 Or App 201, 598 P2d 308, *rev den* 287 Or 507 (1979), for the proposition that, because the police officers continued their search with probable cause to believe evidence of homicide would be found, the "plain view" exception to the warrant requirement is inapplicable, because the evidence was not discovered inadvertently. *See Coolidge v. New Hampshire, supra.* The present case differs factually from both *Hawkins* and *Weaver.*

In *Hawkins,* the police searched the defendant's home under a warrant authorizing a search and seizure of certain instruments and drugs related to the performance of illegal abortions. During the search, a police officer opened a diary to see if drugs were concealed in it. Upon opening the diary, the officer inadvertently noticed, at the place where he opened it, a notation indicating the performance of an illegal abortion. He then called a superior to see whether he could look through a second diary and was told to go ahead. A similar memorandum was found and introduced into evidence. The court noted that the discovery of the memorandum in the first diary was proper, but that reading the second for a similar notation was unauthorized and the second memorandum should have been suppressed. After quoting language from Justice

Stewart's concurrence in *Stanley v. Georgia,* 394 US 557, 570, 89 S Ct 1243, 22 L Ed 2d 542 (1969), condemning the seizure of an allegedly obscene movie which was seized after officers viewed it while at defendant's residence pursuant to a warrant for evidence of bookmaking, the court stated:

> "The only difference between the situation in *Stanley* and the present case is that the evidence which was seized in the present case was evidence of the crime for which the search was being conducted; while in *Stanley,* the evidence seized was evidence of an entirely different crime than that which instigated the search. We believe the distinction to be insufficient to make the language in *Stanley* inappropriate to our use. *The relevant point in both cases is that there was an invasion of an additional area of privacy not authorized by the warrant."* (Emphasis added.) 255 Or at 44.

In the instant case, as the trial court noted, the officers had a right to search every portion of the premises for controlled substances, and in that search it would have been impossible for them not to have found the items that were seized. No additional invasion of privacy not authorized by the warrants took place. Thus, *Hawkins* does not require suppression of evidence of homicide found at defendant's residence.

In *State v. Weaver, supra,* the police had probable cause prior to the application of a search warrant to believe marijuana and cocaine would be found at defendant's residence. The officers, however, obtained a warrant specifically authorizing a search for cocaine only. Police found no cocaine at defendant's residence but did find and seize marijuana. We applied ORS 133.585[4] and affirmed the trial court's suppression of the marijuana.

---

[4] ORS 133.585 provides:

"The scope of search shall be only such as is authorized by the warrant and is reasonably necessary to discover the persons or things specified therein. Upon discovery of the persons or things so specified, the officer shall take possession or custody of them and search no further under authority of the warrant. If in the course of the search the officer discovers things, not specified in the warrant, which he has probable cause to believe to be subject to seizure under ORS 133.535 which he did not have probable cause to expect to find, he shall also take possession of the things discovered."

Unlike in *Weaver,* the officers in the present case did not have probable cause to believe evidence of homicide would be present when they obtained the two search warrants for controlled substances. The officers came upon the evidence of homicide *while executing* the warrants for narcotics. We agree with the analysis of the trial court that the items seized were in plain view of officers who were lawfully on the premises. The items seized do not require suppression under ORS 133.585.

■    Defendant raises several assignments of error dealing with the grand jury proceedings leading to defendant's indictment. On December 13, 1979, defendant moved to stay the grand jury proceedings or, in the alternative, to require the proceedings to be recorded. The motion was denied. As one of his assignments of error, defendant asserts the denial of recording was erroneous. Defendant cites no statute requiring such recordation but argues that it is constitutionally mandated.

In *State ex rel Johnson v. Roth,* 276 Or 883, 888 n 6, 557 P2d 230 (1977), the court concluded that there is no constitutional requirement that a grand jury proceeding be recorded and that the mere failure to record grand jury testimony does not violate a defendant's constitutional rights. This conclusion was reaffirmed in *State ex rel Drew v. Steinbock,* 286 Or 461, 463, 595 P2d 1234 (1979), and *State ex rel Smith v. Murchison,* 286 Or 469, 474, 595 P2d 1237 (1979). Defendant argues, however, that a recent case, *State v. Hartfield,* 290 Or 583, 624 P2d 588 (1981), effectively overruled those cases.

In *Hartfield,* after a key prosecution witness testified, the trial judge refused defendant's request for production of the tape of that witness's testimony before the grand jury. The Supreme Court reversed:

"We hold that after a witness has testified on direct examination by the state, the defendant is entitled to examine an existing tape recording of that witness's testimony given in the grand jury proceedings that led to the return of the indictment upon which trial is held.

"We do not, by this decision, condone wholesale orders for disclosure of grand jury recordings. Where a witness before the grand jury has testified at trial for the state, a particularized need for disclosure exists for purposes of

testing the witness's credibility. *Compare United States v. Proctor & Gamble,* 356 US 677, 683, 78 S Ct 983, 2 L Ed 2d 1077 (1958). As such, the furtherance of justice requires disclosure of prior recorded statements." 290 Or at 592.

Contrary to defendant's argument, *Hartfield* does not stand for the proposition that all grand jury proceedings must be recorded upon request by a defendant. Rather, it requires turnover at trial of any existing recordings of a witness who has testified on direct examination and who testified before the grand jury. The trial court did not err in denying defendant's motion to have the grand jury proceedings recorded.

Defendant raises two other assignments of error dealing with the recording issue, only one of which requires extended discussion. It appears from an examination of the record that the prosecutor did in fact record some of the grand jury proceeding, but only the testimony of potential defense witnesses was recorded. Defendant contends that such partial recording was a blatant violation of the rule in *State ex rel Drew v. Steinbock, supra,* and requires reversal. *Steinbock* was a mandamus proceeding in which the relator, in part, sought to compel the recording of all testimony before the grand jury, rather than only defendant's testimony as the prosecutor had proposed. The Oregon Supreme Court held that the prosecutor's attempt to record only defendant's testimony was not consistent with ORS 132.090:

"In the light of the problems presented in this case, we believe it is reasonable to give a literal construction to the provisions of ORS 132.090 to the effect that when, as in this case, a defendant seeks to appear before a grand jury and asks that if his testimony is to be recorded or reported, all testimony before the grand jury in that case be recorded or reported, and when in such a case a district attorney seeks an order under ORS 132.090 to record or to appoint a reporter for grand jury testimony, any order by the trial court to report or record testimony in such a case must be an order to record or report *'the testimony'* in that *'matter'* and this means *all* of the testimony before the grand jury in that case." (Footnote omitted.) 286 Or at 466.

*Steinbock* does not support a reversal here. Assuming, for the sake of argument, that the prosecutor in the case at bar should have recorded all the testimony at the

grand jury proceeding, rather than the selected witnesses, defendant made no motion to the trial court to rule on a possible remedy.[5] For example, defendant did not move to exclude prosecution witnesses who testified before the grand jury who were not recorded, nor to exclude the use of evidence to impeach the defense witnesses who were recorded,[6] nor for an order requiring any member of the grand jury to disclose potentially inconsistent testimony of the prosecutor's witnesses who testified at trial but were not recorded, ORS 132.220, nor for a mistrial on the ground that the prosecutor's partial recording required such a sanction. Thus, defendant has not preserved any ruling for this court to review.[7]

■ ▪ Defendant next argues that statements made by him to the police on December 12 and the early morning hours of December 13 should have been suppressed because they were made involuntarily. At the hearing on the admissibility of the statements, the investigating officer testified that defendant was advised of his *Miranda* rights in three ways: the officer read them to him, then defendant read them back, and then after reading them again, defendant signed a statement that he understood his rights. Defendant argues that even though his statements were obtained in compliance with *Miranda,* they were nonetheless involuntary under the "totality of the circumstances." There was evidence to support the trial judge's findings of fact, and on the basis of those findings we agree that defendant's statements to the police were voluntary under the totality of the circumstances. *State v. Quinn,* 290 Or 383, 398, 623 P2d 630 (1981); *Ball v. Gladden,* 250 Or 485, 487, 443 P2d

---

[5] Defendant does not cite any rulings by the trial court about the partial recording but instead contends that "the state erred in recording part, but not all, of the testimony before the grand jury."

[6] It appears from the record that these witnesses intended to assert their Fifth Amendment privilege to remain silent.

[7] Relating to the grand jury recording issue, defendant also assigns as error the court's alleged refusal to order the disclosure of testimony of each grand jury witness following such witness's testimony at trial. Defendant was in fact provided with notes of the grand jury proceeding and was offered the recording tapes of all the witnesses who testified who were in fact recorded. That was all the material that was available other than that which defendant could have sought through ORS 132.220. As the trial court noted:

"I can't order that which does not exist * * *."

621 (1968); *State v. Hovater*, 42 Or App 13, 599 P2d 1222 (1979).

Defendant also assigns as error the denial of his motion to compel discovery of certain police personnel files. At trial, defendant moved to compel discovery of all police personnel records of officers Crowther, Gearheart, Dugan and Deppe, all internal police reports relating to the December 12, 1979, shooting incident involved here and all internal reports concerning the execution of search warrants by Portland police officers during the preceding five years. In an attached affidavit, defendant's counsel stated that the material would be relevant to defendant's self-defense assertion, because it would be probative in determining whether defendant was aware of the identity of the victim, Officer Crowther. He also stated he had

> "personally received information concerning the execution of other narcotics search warrants by Officer David Crowther, and other police officers involved in the incident at 9014 N. Lombard on December 12, 1979, to the effect that Officer Crowther and the other officers did not announce their identity before entering the premises. Thus the requested reports are relevant to the guilt or innocence of the defendant in this case."

An attorney representing the City of Portland opposed the motion to compel and opposed the trial court's own *in camera* inspection. He argued that the motion was based upon mere speculation as to the need for the personnel records. The trial court, nonetheless, ordered the production of the personnel files for an *in camera* inspection.

After examining the files, the trial court stated:

> "* * * I have examined the personnel records and in the presence of Mr. Connall and Captain Schwartz and Police Legal Advisor David Kinnaman and City Attorney Tom Williams have gone over matters that the court felt could conceivably have some relevance or tend to lead to some relevant evidence in the case. Captain Schwartz is available to testify that this information is available through non-confidential resources *[sic]* and as a matter of fact has agreed to go beyond what is here to facilitate what is really relevant, what you need for investigation and that is to produce all of the police officer drug raids for a period of one year involving these officers.

"* * * [S]o I'm stating that that is all these matters would produce and for the record I'm talking about officers who were involved in this matter having been injured and other drug raids, drug raids involving not the Outsiders but the Gypsy Jokers, perhaps that was just a disturbance, not a drug raid, and other than that I can state that all that is in the records are proficiency ratings that do demonstrate that all the officers had superior ratings, were proficient in the use of shotguns,. 357's and small arms and numerous commendations from various sorts involving high arrest and search warrant activity on behalf of Officer Gearhart, so these things will remain confidential in their specifics and I made that statement for the record."

The court then authorized the expenditure of public funds for defendant to hire an investigator to review all records of the preceding year of all drug raids of the officers involved in the December 12 shooting, approximately one hundred reports.

Defendant does not cite any statutory authority for his argument that the personnel files of the officers should have been turned over. Rather, he argues that his confrontation and compulsory process rights were violated.

In *State v. Sagner,* 18 Or App 464, 525 P2d 1073, *rev den* (1974), the defendant sought production of the personnel records of one of the detectives who had executed a search warrant at the defendant's home. Counsel for the defendant argued that the records would be necessary to develop the fact that the detective had falsified his testimony because he wanted to rehabilitate himself with the police department because of his past disciplinary problems in the department. We held that the trial court did not err in refusing the defendant's demand, because the reason given by counsel appeared to be pure conjecture. *State v. Sagner, supra,* 18 Or App at 471. *Cf. State v. Fleischman,* 10 Or App 22, 495 P2d 277, *rev den* (1972) (defense counsel contended that the officer defendant allegedly assaulted had a history of violent encounters which personnel records would disclose; *held,* defendant entitled to records).

In the case at bar, defendant was allowed to review internal files and reports of the officers involved as to their drug raids in the previous year. Defendant's counsel sought this information to determine whether the officers involved

had a practice of not announcing their identity prior to execution of search warrants. Defendant was entitled to no more under his motion and affidavit. Defendant's attempt to compel production of the personnel records of Officers Crowther, Gearheart, Dugan and Deppe was based merely on defendant's belief that such records were "extremely important" and "relevant to issues with respect to self-defense and other matters." Defendant had the burden to establish with some particularity that the evidence sought would be favorable. *State ex rel Dooley v. Connall,* 257 Or 94, 475 P2d 582 (1970); *see also, State v. Koennecke,* 274 Or 169, 545 P2d 127 (1976). Defendant's belief by itself constituted an insufficient showing to compel an *in camera* inspection of the personnel records, let alone complete disclosure to defendant. *State ex rel Johnson v. Schwartz,* 26 Or App 279, 552 P2d 571 (1976); *State v. Sagner, supra.* Thus, the trial court's *in camera* inspection of the personnel files was gratuitous, and its denial of discovery was not erroneous.

Defendant's remaining assignments of error deal with trial testimony of the officers executing the two search warrants for narcotics. One officer testified that, although he heard someone inside the house say, "Wait, we'll open the door," his experience was that such a response was merely a ploy for occupants to gain more time to destroy contraband. He testified that that was the reason the officers continued to ram the door and gained entry forcibly. Another officer testified that in his experience as an officer, when search warrants are executed, occupants will sometimes throw contraband out a window or otherwise destroy it. This testimony was also offered to show the reason the officers forcibly entered the house.[8]

■ ■ Defendant argues the above testimony was irrelevant and that its prejudical effect outweighed whatever probative value it had. The trial judge found that the testimony was relevant to the activities of the police in executing the warrant. The process of weighing the probative value of evidence against its tendency to produce

[8] Another officer present at the execution of the search warrants testified that he saw one of the occupants throwing a substance, later identified as marijuana, out of the third floor of the house about 15 seconds after the police first announced their presence.

prejudice is a matter for the trial judge. *State v. Hall,* 36 Or App 133, 136, 583 P2d 587 (1978); *State v. Oland,* 1 Or App 272, 461 P2d 277, *rev den* (1969). The testimony was relevant and was properly admitted.

Affirmed.