Argued and submitted November 22, 1989, affirmed April 18, reconsideration denied June 13, petition for review denied July 31, 1990 (310 Or 205)

# STATE OF OREGON,
*Respondent,*

*v.*

# GARY LLOYD LANDERS,
*Appellant.*

## (10-88-04076; CA A60806)

790 P2d 1161

Michael McGrady, Eugene, argued the cause and filed the brief for appellant.

Jonathan H. Fussner, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

## DEITS, J.

Defendant appeals from a conviction for manufacturing marijuana. ORS 475.992(1)(a). He assigns error to the trial court's denial of his motions to suppress evidence seized and his confession, as well as to evidentiary rulings. We affirm.

Defendant rented one of two houses located on a wooded six-acre lot. Ogbin rented the other one. A private gravel road runs across the property, past the houses and forms a "T" intersection with the driveways to them. Defendant's backyard consists of a narrow flower bed that runs along the house, a strip of lawn approximately 10 feet wide and an ivy covered bank that covers the side of the hill behind the house. Sloping up from the ivy is a patch of brushy undergrowth and then a heavily wooded area.

Ogbin called the State Police on several occasions to report his suspicions that defendant was operating a methamphetamine laboratory in the house. Ogbin usually spoke with Trooper Codding, who testified that Ogbin told him that defendant had been renting the house for some time but that he had only moved a table and two chairs into the house and only came to the house every few days for a short period of time. Ogbin told Codding that he had noticed that some of the windows of the house had been blacked out. On one occasion, when he had gone onto defendant's property to retrieve his dog, one of the curtains had partially fallen and was flapping, even though the window was closed. Apparently, defendant repaired the curtain on his next visit to the property. Ogbin also said that he saw a bright light shining from inside the room where the curtain had fallen.

On the day that defendant was cited, Ogbin called Codding to report that defendant had been at the house and taken down the curtains and appeared to have cleaned the inside of the house. Ogbin added that, on the previous day, he had been retrieving his dog in the brushy area overlooking defendant's backyard and had noticed several small piles of potting soil along with some root clumps. He told Codding that the vegetation in that area had been trampled, forming a path down the ivy bank and over the lawn to a window in the back of the house.

When Codding arrived at Ogbin's residence, they

walked toward defendant's property. While standing near defendant's driveway, Ogbin pointed out the piles of potting soil in the brushy area above defendant's house. They walked around the corner of defendant's house and into the backyard, where Codding noticed several other piles of potting soil and root balls in the flower bed that ran along the house. Codding testified that he saw a marijuana leaf lying on the path that led from the yard up to the brushy area. He identified the root clumps as consistent with other marijuana plant root balls that he had seen. He then went up the bank and into the brushy area, where he turned over some of the piles and uncovered some marijuana leaf fragments.

Later that day, Codding and Trooper Zerzan went to defendant's residence at another location. Defendant's wife answered the door. They identified themselves, and she let them in. Codding testified that defendant was in a reclining chair and appeared to have been sleeping. Codding told defendant that he wanted to talk to him about the rental property but that, before defendant said anything, he wanted to read him his *Miranda* rights, which he did. Defendant said that he understood his rights, although he refused to sign an "advice of rights" form. Codding testified that he then told defendant that he had just come from the rental house with evidence that there was an indoor marijuana growing operation there. Defendant then said that he did not know whether he should say anything.

At that point, Codding testified, there was a "lagging in the conversation," during which defendant and his wife exchanged glances but said nothing. Codding then told defendant that he had sufficient information to warrant an indictment for manufacturing marijuana and that he could either take defendant into custody or issue him a citation to appear in court at a later time. Codding and Zerzan testified that defendant then confessed to growing about 25 marijuana plants under a single sodium halide light in one of the back rooms at the rental house. Codding testified that, after defendant confessed and as he was writing the citation, defendant asked what would happen to him. Codding testified that it was at that point that he said that it had been his experience that the charge might be reduced to a misdemeanor, because defendant was a first time offender.

Defendant's testimony about his conversation differed as to both content and timing. He claims that, after he had told the officers that he did not know whether he should say anything, he asked for an attorney. He also claims that Codding then told him that he could either arrest him on the felony charge or, if defendant cooperated and gave a statement, he could simply issue a citation, in which case the charge would likely be reduced to a misdemeanor, at which point he confessed. The trial judge, however, believed the officers' version of the facts. He said, "I specifically adopt Trooper Codding's version of *what* was said and *when* it was said in the course of his conversations with [defendant]" (emphasis supplied), and added, "I don't find any evidence of improper inducement or coercion being used here by the officers."

Defendant argues that his confession was inadmissible under ORS 136.425(1), which provides, in pertinent part, that a "confession or admission of a defendant * * * cannot be given in evidence against the defendant when it was made under the influence of fear produced by threats." Defendant also contends, under Article I, section 12, of the Oregon Constitution, and the Fifth and Fourteenth Amendments, that his confession was not voluntary and, therefore, that his rights against self-incrimination were violated.

The trial court concluded that, under the totality of the circumstances, defendant's confession was voluntary. We review the underlying findings to determine if they are supported by the evidence. *State v. Christopher,* 55 Or App 544, 552, 639 P2d 642 (1982). Both officers testified that defendant confessed *after* Codding explained that he could either take defendant into custody or issue a citation, but *before* Codding suggested that the charge against defendant might be reduced to a misdemeanor. Accordingly, there was sufficient evidence to support the trial court's findings and, on the basis of those findings, we agree that defendant's confession was given voluntarily. Moreover, defendant's confession was not coerced by Codding's statement that he could either arrest defendant or simply issue him a citation because, in view of the information that Ogbin had given Codding and what Codding had seen, there was probable cause to arrest defendant. Codding, therefore, did not threaten to take any action that was not author-

ized under the facts. *See State v. Bates,* 92 Or App 385, 388, 758 P2d 421, *rev den* 307 Or 170 (1988).

■ Defendant nonetheless contends that his confession was induced by Codding's alleged promise to reduce the charge to a misdemeanor, if he would cooperate. However, the court specifically found that it believed Codding's version of both the *timing* and the *substance* of the conversation, and Codding testified that defendant confessed *before* he said that the charge *might* be reduced to a misdemeanor for a first time offender. If the evidence supports the trial court's findings, we will not disturb them. *Ball v. Gladden,* 250 Or 485, 487, 443 P2d 621 (1968). We hold that there is evidence to support the trial court's findings and conclude that defendant's statement was not coerced by threats of unlawful action or induced by any promises of leniency.[1] *See State v. Hovater,* 42 Or App 13, 16-17, 599 P2d 1222 (1979). The trial court did not err by denying defendant's motion to suppress the confession.

■ Defendant also assigns error to the trial court's denial of his motion to suppress the marijuana leaves seized on the property by Codding. He does not contend, however, that his confession came as a result of Codding's activities at the rental house. Because the confession and the corroborating evidence provided by Ogbin are overwhelming proof of defendant's guilt, "any error committed by the trial court in admitting the evidence discovered in the search was harmless beyond a reasonable doubt." *Chapman v. California,* 386 US 18, 22, 87 S Ct 824, 17 L Ed 2d 705 (1967); *State v. Bates, supra,* 92 Or App at 388. For the same reason, we do not need to address defendant's third and fourth assignments of error, that the chain of custody of the leaves was broken and that Codding was not qualified as an expert in identifying marijuana leaves.

Affirmed.

---

[1] Defendant does not argue that his confession was tainted by Codding's activities at the rental house.