Argued July 15, affirmed August 26, reconsideration denied
October 2, petition for review denied December 27, 1974

STATE OF OREGON, *Respondent, v.*
MAX SAGNER, Jr. (No. C 72-03-0762), *Appellant.*

525 P2d 1073

*Howard R. Lonergan,* Portland, argued the cause and filed the briefs for appellant.

*John W. Burgess,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

Before Schwab, Chief Judge, and Langtry and Tanzer, Judges.

LANGTRY, J.

This appeal is from conviction of Max Sagner for theft in the first degree. ORS 164.055. The case was previously tried with Max Sagner and his wife, Rita Sagner, being joined as defendants. They were convicted and on appeal this court reversed, holding that the search warrant upon which much of the evidence used in the convictions was obtained was in large part invalid. For that reason in that case we stated we did not reach the question of whether the search warrant was general and possibly invalid with reference to some items seized because we found it was valid (thus, in that respect, not general) with reference to two allegedly stolen items, seized under the warrant, which were found in the Sagner home. We held one other item, from its suspicious appearance, was properly seized because it was in plain view inside the house, which the officers had a right to be in. *State v. Sagner,* 12 Or App 459, 467, 471-73, 506 P2d 510, Sup Ct *review denied* (1973).

At the retrial from which this new appeal was taken, Max Sagner chose to be tried separately and he was again convicted. This time only the three items which we held were validly seized were the subject of the trial. The statement of facts in the former case, 12 Or App at 459, is adequate for this case. Defendant makes 11 assignments of error which will be discussed in successive order.

■ ■ New motions for suppression of all evidence were made and defendant contends they should have been granted because the warrant was general and hence invalid. Our previous decision is controlling. We no more need to reach the question of whether the warrant was general in some respects now than we

did then for the warrant was valid as to two items which were used in evidence in this case and as to them it was not general. We held in the previous case a warrant is severable so that, if it is part valid and part invalid, items seized under the valid part may be used in evidence.

 It is contended that, inasmuch as deputy district attorneys who were called while the warrant was being executed went into the Sagners' home and heard statements made by the defendant which were reported in evidence, the statements should have been suppressed and that the search should have been declared invalid.

One point defendant makes is that the warrant was directed to any "peace officer" and the deputy district attorneys were not peace officers. Defendant has cited no authority in support of this proposition. The state cites us *State v. Quartier,* 114 Or 657, 236 P 746 (1925), which states that it is immaterial who assists the officers who are directed to search. 114 Or at 674.

Defendant also contends that admissions against his interests made by the defendant to the officers and the deputy district attorneys while the search was proceeding were "fruit of the poisoned tree" and should not have been allowed in evidence. Even though the warrant was invalid with reference to many items taken from defendant's home, it was valid with reference to two items. The record shows that the statements referred just as much to these two items as to the others. We see no merit to this argument.

██ It is argued that no acts of concealment were "done on or after January 1, 1972 when the

statute involved went into effect" and that therefore there was failure of proof because the crime charged was under a statute which became effective on that date. The uncontroverted evidence was that each of the three items came into the possession of the defendant during the year 1971 and that the items were all seized in defendant's home on January 12, 1972. In *State v. Brown,* 13 Or App 269, 508 P2d 234, Sup Ct *review denied* (1973), an almost identical situation was involved and we held that where a person continues to possess the property after the effective date of the new code it is sufficient proof of concealment and withholding and consequently proof of the one crime, theft. The court properly instructed the jury in the words of the statute in the case at bar. See the discussion of this question in *State v. Jim/White,* 13 Or App 201, 217-220, 508 P2d 462 Sup Ct *review denied* (1973).

█ These assignments relate to the claim raised in Assignment (3). The first is that a mistrial should have been allowed when the court cautioned defense counsel against arguing that the jury could consider nothing that happened before January 1, 1972. Counsel continued to argue this view of the law, which the court had said was wrong and which we have above held was wrong, and the court firmly told him to stop. We see nothing wrong in that.

█ In Assignment (5) defendant contends that the court erred in instructing the jury that the defendant would be guilty if it found he concealed the items "on or about the 12th day of January, 1972 or within three years prior to the return of the indictment." The latter part of this instruction refers to the three-year statute of limitations for the crime of theft. ORS 131.-125. In taking the exception counsel stated: "* * *

[O]nly the acts *up to* January the first 1972 can be—can be availed of by the State in concealing stolen goods because the statute only took effect at that time." (Emphasis supplied.) This reasoning is erroneous under our decision in *State v. Brown,* supra, and is otherwise insufficient as a basis for us to consider the merits of the exception, if a point is to be made that the part of the instruction relating to the statute of limitations was error. *State v. Avent,* 209 Or 181, 302 P2d 549 (1956). For conviction there must have been a violation of the new statute after the effective date of the statute, but the jury may consider in evidence all relevant acts of defendant which preceded that date. And under *Brown,* the acts of concealment and withholding after January 1, 1972 were most relevant. Furthermore, the defendant, under questioning by his own counsel, testified that he had all three items in his home after January 1, 1972. Hence, any issue concerning error in the instruction was rendered moot by the defendant's own judicial admission. *State v. Waggoner,* 228 Or 334, 339, 365 P2d 291 (1961).

■ Assignment (6) relates to the refusal of the court to instruct that the acts of concealment "relied upon by the State for proof of the crime alleged, must have been done on or after January 1, 1972." This is inconsistent with the quotation from defendant's counsel, above. Inasmuch as defendant testified that he possessed the property in his home, which at the very least was a withholding of it from the rightful owner, after that date, there was no necessity for the instruction. *See State v. Waggoner,* supra, and *State v. Jim/White,* supra. Although the requested instruction was proper, for reasons stated above, we find no prejudice from the court's failure to give it.

■ ■■■■■ Assignments (7), (8) and (9) all relate to the same point. Prior to trial defense counsel issued a subpoena *duces tecum* to the Portland Chief of Police requiring the production of the personnel records of one of the detectives who executed the search warrant, who was a principal witness against the defendant. The reason defendant sought the files, in the words of his counsel, was:

> "I want to develop the fact that he [the detective] is falsifying his testimony because he wants to rehabilitate himself with the Chief of Police because of past disciplinary problems with the Police Department."

In support of this demand, refused by the court, the defendant relies upon *State v. Fleischman,* 10 Or App 22, 495 P2d 277, Sup Ct *review denied* (1972), in which we required that police records of a particular policeman be made available for cross-examination of that policeman by defense counsel. There, defendant was being prosecuted for assault upon a police officer and it was shown by the prosecution that the defendant had had previous altercations with police officers. One of the previous fights shown in evidence was with a particular officer in 1964. Defense counsel contended that that officer had been involved in other violent encounters with other people and that a look at his personnel records would disclose that he was a frequent aggressor. Under the peculiar facts of that case, we held that defendant was entitled to the information for purposes of cross-examination but we then stated:

> "We do not mean to suggest that criminal defendants can routinely have access to the personnel records of policemen who testify against them. We only hold that on this unusual record ex-Officer Loos's records contain evidence 'which, if believed by a trier of fact, would be seriously considered by

that trier of fact in determining guilt or innocence.' *Hanson v. Cupp*, [5 Or App 312, 320, 484 P2d 847 (1971).] * * *" 10 Or App at 33.

The *Fleischman* case is not authority for what defendant's counsel was seeking to do in the case at bar. The reason he gave for wanting the records was that he suspected the officer had had disciplinary problems. If that were so, he said, the officer might now be overreaching against this defendant in order to offset his demerits. This appears to be pure conjecture. If counsel were successful in this, then, as the trial judge said, defense counsel could go on "fishing expedition[s]" to try to find something derogatory for cross-examination against police officers who allegedly have had disciplinary problems and subsequently are involved in unrelated prosecutions. These assignments of error are without merit.

■ ■ On cross-examination defendant was seeking to explain his possession of the stolen property. As he was telling about who was present when the man he said he had obtained some of it from came into his place of business, he said that there were several customers and "Harvey Smith, George * * * Dan Foss, Jimmy Longoria * * *." He was asked:

"Q Who is Mr. Longoria?

"A Just a young fellow that was working for me. He was on work release out of jail.

"Q Where is he now?

"A I think he is down in prison. This didn't work out."

In the prosecutor's opening argument he said to the jury while he was talking about the evidence defendant had produced:

"* * * I ask you to recall Mr. Longoria who

Mr. Sagner tells us is in prison. I ask you to refer to that association. All information—

"MR. LONERGAN: I am going to move for a mistrial. Guilt by association; guilt by association—"

The court denied the motion; then in argument defense counsel said:

"* * * [A]s I say it's obvious why we didn't bring Jimmy Longoria. He has a criminal record, and jurors, really you have to be simple minded to believe these people * * *."

In view of this entire record the court did not act outside the bounds of discretion by denying the motion for mistrial.

The remaining assignment of error merits no discussion.

Affirmed.