STATE ex rel JOHNSON, *Appellant,*
*v.*
SCHWARTZ et al, *Respondents.*
(No. C 75-03-0769, CA 4528)
552 P2d 571

*Rita Radich,* Portland, argued the cause for appellant. On the brief was John Toran, Jr., Portland.

*Thomas R. Williams,* Deputy City Attorney, Portland, argued the cause for respondents. With him on the brief was John W. Osburn, City Attorney, Portland.

Before Schwab, Chief Judge, and Fort and Thornton, Judges.

THORNTON, J.

**THORNTON, J.**

This contempt proceeding presents a single issue: Was the accused entitled to compel the production of the personnel records of the police officers who arrested him, for an *in camera* inspection by the trial court?

The accused, Cedric Johnson, a minor, was charged in the Multnomah County District Court with assault upon a police officer, and minor in possession of alcoholic liquor. Prior to trial Johnson caused a subpoena *duces tecum* to be served on the Portland Acting Chief of Police requiring the production of the above records. Defendants are the custodians of the records sought.

The police bureau refused to comply with the subpoena and instead filed a motion to quash the subpoena on the following grounds: (1) The records sought by the subpoena had not been shown to be relevant to the issues involved in the pending prosecution; (2) disclosure of the personnel records would be an unreasonable invasion of the officers' right to privacy; (3) that the records contained exempt information; (4) that the subpoena was defective for lack of specificity; and (5) that the personnel records were not subject to pretrial discovery.

In the course of the subsequent proceedings Johnson contended that instead of his assaulting the named officer, it was the officers who assaulted him; that he had heard of a similar incident involving one of the same officers and another young black person; and that he believes that reports of such incident and possibly others should exist in the officers' personnel files.

It should be noted that the foregoing contentions were not set forth in writing by affidavit or otherwise by Johnson or his counsel. The only indication of these that we can find in the record is in the district judge's "Memorandum and Opinion Order — Motion to Quash Subpoena Duces Tecum" dated January 29, 1975,

which is referred to below, and in the stipulation of facts prepared for the appeal hearing in circuit court which followed. We note a statement in Johnson's brief that "the relator's mother made complaint about the physical abuse her son received at the time of his arrest." Again, we can find nothing in the record, however, to support this statement.

Following the hearing on the motion, the district court ordered that the police bureau comply with the subpoena.

The bureau then moved the court to reconsider its order alleging that (1) personnel files and internal affairs records may become available for inspection only when the applicant shows that those records contain evidence relative to the issues of the case and (2) that Johnson has failed to make a preliminary showing of relevance and need to justify production of the documents for an *in camera* inspection by the court.

Following this the district court on February 28, 1975, although modifying its order in part, reaffirmed its order and found defendants in contempt. Defendants thereupon appealed to the circuit court. Following a hearing, the circuit court reversed and set aside the district court's finding of contempt. It is from this order of the circuit court that Johnson appeals to this court.

The basic issue presented here has been before the appellate courts of this state on several occasions. *See,* for example, *State v. Fleischman,* 10 Or App 22, 495 P2d 277, Sup Ct *review denied* (1972); *State v. Sagner,* 18 Or App 464, 525 P2d 1073, Sup Ct *review denied* (1974).

In *Fleischman* defendant was indicted for assault with intent to kill a police officer. This court, after an *in camera* inspection of the documents in issue, held that the refusal to allow defense counsel access to the personnel records of a witness, who was an ex-police officer, for the purpose of testing the accuracy and

reliability of the ex-officer's testimony was not justified and constituted reversible error.

In *Sagner* defendant was charged with theft. Prior to trial defendant subpoenaed the personnel records of one of the detectives who executed the search warrant of defendant's house, and who was the principal witness against defendant. Defendant's counsel gave as his reason for his request:

> " 'I want to develop the fact that he [the detective] is falsifying his testimony because he wants to rehabilitate himself with the Chief of Police because of past disciplinary problems with the Police Department.' " *State v. Sagner,* supra at 470.

We held that the trial court did not err in refusing defendant's demand because the reason given by defendant's counsel "appears to be pure conjecture."

The Oregon Supreme Court has indicated that disputes about production of evidence may be resolved by way of an *in camera* inspection by the trial court. *State ex rel Dooley v. Connall,* 257 Or 94, 475 P2d 582 (1970). However, when a criminal defendant makes a sufficient showing of materiality and favorableness, evidence must be given to him, and an *in camera* inspection is irrelevant. *State v. Koennecke,* 274 Or 169, 545 P2d 127 (1976). Conversely, a trial court is not obligated to make an *in camera* inspection when the claimed materiality of evidence is only "pure conjecture." *State v. Sagner,* 18 Or App 464, 471, 525 P2d 1073, Sup Ct *review denied* (1974). Therefore, only in situations that fall between these extremes will the *in-camera*-inspection approach be useful — situations where there has been some showing of materiality and favorableness (but not enough for outright production) that is something more than conjecture.

It is difficult to formulate a precise rule to indicate what showing must be made before an *in camera* inspection of evidence is essential. Accordingly, this is an appropriate area to vest considerable discretion in the trial court. In exercising this discretion, trial

courts should be guided by a balancing test: The greater the burden of production would be, the greater should be the showing of possible materiality and favorableness by the moving party.

What was the showing of materiality and favorableness by Johnson in this case? The circuit court had before it a transcript of part of the district court proceedings and a stipulation. The transcript shows the district court referring to "personnel records [that] might have some incidents in them regarding police officers using force in the past," and then asking defense counsel:

> "Well, do you have any basis to believe that those personnel records would show anything like that?"

Defense counsel responded:

> "Well, Your Honor, to answer your question, no. * * *"

The stipulation reports that at a subsequent district court hearing

> "* * * counsel for Cedric Johnson stated to the [District] Court that he had heard of another incident involving Officer Larkin and another black person, similar to what defendant Cedric Johnson contended occurred in this case. * * *"

■ On this record, we hold that the circuit court acted within the bounds of its discretion in concluding there had been an insufficient showing to call for an *in camera* inspection. Having once said there was no basis for a belief that the personnel records contained material and favorable evidence, it behove defense counsel when he shifted positions to come forward with something more than a mere assertion of prior similar incidents. Without some showing, at the least, that the prior incident or incidents actually occurred, and the source and nature of this information, the circuit court was entitled to conclude that defendant's request for the files should be denied. *State v. Sagner, supra.*

Affirmed.