[No. 59544-5.   En Banc.   February 18, 1993.]

THE STATE OF WASHINGTON, *Appellant,* v. HYSON BLACKWELL, ET AL, *Respondents.*

---

[78]*State v. Swindell,* 93 Wn.2d 192, 607 P.2d 852 (1980).

824

*John W. Ladenburg, Prosecuting Attorney,* and *Chris Quinn-Brintnall, Senior Appellate Deputy,* for appellant.

*Ronald D. Ness & Associates* and *Jeffrey J. Jahns,* for respondents.

GUY, J. — Defendants were charged with two counts of third degree assault and one count of first degree trespass. The trial court dismissed the prosecution's case under CrR 8.3(b), finding that the State did not comply with a pretrial order requiring production of the personnel files and service records of the police officers who were the alleged victims. The State appealed. We granted direct review and reverse.

FACTS

On November 25, 1990, juvenile defendants Hyson Blackwell and Lateira Sabb were causing a disturbance in the Life Center Church in Tacoma. Church officials called the Tacoma Police Department to assist when defendants refused to leave as ordered. Tacoma Police Officers William Berger and John Durocher were dispatched to the church. Upon arriving at the church, the officers directed Blackwell and Sabb to leave the premises. The defendants refused to comply and then allegedly assaulted the two officers. The State filed two charges of third degree assault and one charge of criminal trespass in the first degree against both Blackwell and Sabb in Pierce County Juvenile Court.

On January 30, 1991, which was the morning of trial, defense counsel moved for a continuance based upon a demand to the State to produce the service records of arresting Officers Berger and Durocher. The trial court granted the continuance, reset the trial for February 13, 1991, and directed the State to look into the possibility of obtaining the

records. The State filed a motion for reconsideration under CrR 4.7(d), contending that the prosecutor's office had no control over the officers' service records. A pretrial hearing was set on the motion for reconsideration on February 7.

At the pretrial hearing, defense counsel Lucile LaDue stated that when she saw Officer Berger the morning of trial she became concerned because of a previous encounter she recalled having with Officer Berger. Ms. LaDue told the court that, in her opinion, Officer Berger was the most racist man she had ever met, and that she wanted to inspect both officers' service records because of her belief that the arrests may have been racially motivated.[1] Ms. LaDue did not provide any information about Officer Durocher or express any opinion concerning him other than he was Officer Berger's partner. The trial court was persuaded by Ms. LaDue's statement and ordered the prosecutor to produce the service records and personnel files of both officers.

The State objected to this order, claiming the prosecutor did not have access to or control over the documents. The deputy prosecuting attorney informed the court that prior to the pretrial hearing he had attempted to obtain the files, but he was told by an official in the Tacoma City Attorney's office that the prosecutor was not eligible to receive those records.

On the ground that the State could not produce records not in its control, the prosecutor suggested that the trial court issue a subpoena duces tecum directed to the Tacoma Police Department. Skeptical of the State's efforts to produce the documents, the trial court left the order unchanged, but added a sentence permitting defense counsel to issue a subpoena duces tecum to the Tacoma Police Department.

On February 13, 1991, the new trial date, defense counsel, being notified that the State had not obtained the service records, moved to dismiss the prosecution's case against both defendants pursuant to CrR 8.3(b). Defense counsel argued that the State's failure to produce the requested

---

[1] There is nothing in the record which indicates the race of the defendants.

discovery amounted to mismanagement of its case, and that dismissal was warranted in the furtherance of justice. The trial court agreed and dismissed all counts.

The State appealed the trial court's ruling to the Court of Appeals, which certified the case to this court pursuant to RCW 2.06.030. We granted direct review.

## ISSUES

This case presents two issues for review. First, did the trial court abuse its discretion when it ordered the prosecution to produce the police officers' personnel files/service records? Second, did the trial court err in dismissing criminal charges against the defendants under CrR 8.3(b)? We hold that the trial court erred in both instances. Accordingly, we reverse and remand.

## ANALYSIS
### I
### Criminal Discovery Rules

CrR 4.7 governs criminal discovery. *State v. Pawlyk*, 115 Wn.2d 457, 471, 800 P.2d 338 (1990). The scope of criminal discovery is within the trial court's discretion. We will not disturb a trial court's discovery decision absent a manifest abuse of that discretion. *State v. Yates*, 111 Wn.2d 793, 797, 765 P.2d 291 (1988).

A. Material Held by Others.

CrR 4.7 is a reciprocal discovery rule that separately lists the prosecutor's and defendant's obligations when engaging in discovery. *Yates*, 111 Wn.2d at 797. The prosecutor has a duty to disclose and to preserve evidence that is material and favorable to the defendant. CrR 4.7(a)(3). Failure to do so will generally be held to violate the accused's constitutional right to a fair trial. *State v. Mak*, 105 Wn.2d 692, 704, 718 P.2d 407, *cert. denied*, 479 U.S. 995 (1986). The prosecutor's general discovery obligation is limited, however, "to material and information within the knowledge, possession or control of members of the prosecuting attorney's staff." CrR 4.7(a)(4). Where the prosecutor's efforts to obtain discoverable material held by others are unsuccessful, the

court has authority to issue suitable subpoenas or orders. CrR 4.7(d).[2]

Defendants assert that CrR 4.7(b) authorized the trial court to require the State to obtain this discovery even though the service records were held by the Tacoma Police Department. Defendants' reading of CrR 4.7(b) is incorrect. CrR 4.7(b) identifies *defendant's obligations* regarding discovery and not court authority to order discovery. CrR 4.7(d) is the provision which allows the trial court to order discovery from third parties via a subpoena.

The personnel files of the Tacoma police officers were not within the control or possession of the Pierce County Prosecutor's office. Pursuant to the court's direction to look into the possibility of obtaining the records, the prosecutor contacted both the Tacoma Police Department and the Tacoma City Attorney's office. The prosecutor informed the trial court and defense counsel that he had requested the personnel files and had been told he could not have them. The trial court was unpersuaded that the prosecutor had made sufficient efforts to produce the documents and ordered the State to produce them.

The trial court acknowledged the option of a subpoena by noting the availability of a subpoena duces tecum in its order for discovery. Defense counsel declined to request a subpoena, claiming that it would be futile to go through the process since the Tacoma Police Department had already refused the prosecutor's request for the records. We reject this argument since the criminal discovery rules are designed to accommodate this scenario. Assuming the records were shown to be material to the defense, the trial

---

[2]CrR 4.7(d) states:

"Upon defendant's request and designation of material or information in the knowledge, possession or control of other persons *which would be discoverable if in the knowledge, possession or control of the prosecuting attorney,* the prosecuting attorney shall attempt to cause such material or information to be made available to the defendant. If the prosecuting attorney's efforts are *unsuccessful* and if such material or persons are subject to the jurisdiction of the court, *the court shall issue suitable subpoenas* or orders to cause such material to be made available to the defendant." (Italics ours.)

court should have issued a subpoena pursuant to CrR 4.7(d). Any objection to disclosure could be raised by the subpoenaed party at hearing.

B. Materiality of Requested Documents.

The State further argues that the trial court abused its discretion in ordering discovery since defense counsel failed to substantiate the claim that the documents contained information material to their clients' defense. We agree.

■ ■ A defendant's constitutional due process right to disclosure relates only to evidence which is favorable to the defendant and material to guilt or punishment. *Brady v. Maryland*, 373 U.S. 83, 87, 10 L. Ed. 2d 215, 83 S. Ct. 1194 (1963); *see also State v. Mak*, 105 Wn.2d at 704. CrR 4.7(a) lists the prosecutor's obligations in engaging in criminal discovery. If an accused requests disclosure beyond what the prosecutor is obliged to disclose, he or she must show that the requested information is material to the preparation of his or her defense. *Mak*, 105 Wn.2d at 704 (citing CrR 4.7(e)(1)).[3]

As we stated in *Mak*, "[t]he mere *possibility* that an item of undisclosed evidence *might* have helped the defense or *might* have affected the outcome of the trial . . . does not establish 'materiality' in the constitutional sense." *Mak*, at 704-05; *accord, State v. Bebb*, 108 Wn.2d 515, 523, 740 P.2d 829 (1987).

Assuming arguendo that the documents were in the possession and control of the prosecutor, we review the record to determine whether the defendants established that the requested documents contained information material to their defense.

■ The trial court ordered the prosecutor to produce the officers' service records based solely on defense counsel La-

---

[3]CrR 4.7(e)(1) states:

"Upon a showing of materiality to the preparation of the defense, and if the request is reasonable, the court in its discretion may require disclosure to the defendant of the relevant material and information not covered by sections (a) [Prosecutor's Obligations], (c) [Additional Disclosures Upon Request and Specification] and (d) [Material Held by Others]."

Due's suggestion that the arrests of Blackwell and Sabb might have been racially motivated. Neither defense counsel established any factual predicate to demonstrate that the officers' service records contained information material to their clients' defense to this particular assault charge. No misconduct by either officer has been alleged. Although Ms. LaDue believed that Officer Berger is racist, she offered no affidavit, no statement that indicated he acted as such or was so motivated during *this* incident at the Tacoma church. Defense counsel offered nothing regarding Officer Durocher's bias — other than the allegation that since he was Berger's partner there might be a "close association of behavior". At a minimum, defense counsel should have provided an affidavit or representation to the court asserting the factual basis for believing the arrest of their clients was racially motivated.

Defense counsel instead argued that the service records/personnel files are material because they *could* lead to exculpatory evidence of improper police conduct and/or arrests based on race and excessive force that might rebut the officers' claim of proper police conduct. This reasoning was persuasive to the trial court, which apparently relied on the broad discovery language of CR 26(b) as a basis for its order. We reject this rationale. *See State v. Gonzalez*, 110 Wn.2d 738, 744-45, 757 P.2d 925 (1988) (CR 26 is inapplicable to criminal cases).

Defense counsels' broad, unsupported claim that the police officers' personnel files *may* lead to material information does not justify automatic disclosure of the documents. *See State v. Kaszubinski*, 177 N.J. Super. 136, 140-41, 425 A.2d 711 (1980) (defendant not entitled to even an in camera inspection of police officer's personnel file without a showing that the file contained material information that might bear on the officer's credibility); *People v. Gissendanner*, 48 N.Y.2d 543, 399 N.E.2d 924, 423 N.Y.S.2d 893 (1979) (defendant made no factual showing that it was reasonably likely the police officer's personnel file contained relevant and material information); *People v. Condley*, 69 Cal. App. 3d 999, 138 Cal.

Rptr. 515 (defendant made no showing of good cause or plausible justification for inspection), *cert. denied,* 434 U.S. 988 (1977); *State ex rel. Johnson v. Schwartz,* 26 Or. App. 279, 552 P.2d 571 (1976) (that defendant's attorney "heard" of another similar incident is not a sufficient showing); *State v. Sagner,* 18 Or. App. 464, 525 P.2d 1073 (1974) (whether the information exists is purely conjecture).

A defendant must advance some factual predicate which makes it reasonably likely the requested file will bear information material to his or her defense. A bare assertion that a document "might" bear such fruit is insufficient. Our review of the record indicates that no such showing of materiality was made in this case.

The State advances a variety of arguments against disclosure of the officers' personnel files, including the court's failure to conduct an in camera review prior to the court ordering the documents to be produced. We decline to address these issues as they are unnecessary to our decision in this case.

## II
### Dismissal of Prosecution

■■ We next address the issue of whether the trial court erred in dismissing criminal charges against the defendants under CrR 8.3(b). The trial court's power to dismiss is discretionary and is reviewable only for manifest abuse of discretion. *State v. Dailey,* 93 Wn.2d 454, 456, 610 P.2d 357 (1980). Discretion is abused when the trial court's decision is manifestly unreasonable, or is exercised on untenable grounds, or for untenable reasons. *State ex rel. Carroll v. Junker,* 79 Wn.2d 12, 26, 482 P.2d 775 (1971).

■ CrR 8.3(b) provides that "[t]he court on its own motion in the furtherance of justice, after notice and hearing, may dismiss any criminal prosecution and shall set forth its reasons in a written order." We have repeatedly stressed that " 'dismissal of charges is an extraordinary remedy available only when there has been prejudice to the rights of the accused which materially affected his or her rights to a fair trial.' " *Spokane v. Kruger,* 116 Wn.2d 135, 144, 803 P.2d 305

(1991) (quoting *Seattle v. Orwick*, 113 Wn.2d 823, 830, 784 P.2d 161 (1989)).

■ We have interpreted CrR 8.3(b) to require a showing of arbitrary action or governmental misconduct before dismissal of a prosecution is appropriate. *State v. Lewis*, 115 Wn.2d 294, 298, 797 P.2d 1141 (1990). Defendants correctly argue that governmental misconduct need not be of an evil or dishonest nature; simple mismanagement is sufficient. *See Dailey*, 93 Wn.2d at 457. Citing *State v. Sherman*, 59 Wn. App. 763, 801 P.2d 274 (1990), defendants contend the prosecutor's failure to obtain the requested discovery amounts to mismanagement of the case and justifies dismissal. We disagree.

In *Sherman*, the Court of Appeals affirmed the trial court's dismissal of a criminal prosecution pursuant to CrR 8.3(b). In that case, the State charged the defendant with first degree theft, alleging that she had stolen money from her employer. *Sherman*, at 765. The trial court entered an omnibus order requiring the State to provide the defendant with several items, including all records submitted by the employer to the IRS during the defendant's employment. A deputy prosecutor approved the order but failed to provide the requested discovery.

*Sherman* is distinguishable from this case. In *Sherman*, the State *agreed* to provide the requested discovery, including the IRS records, even though the State did not have physical control of the records. *Sherman*, at 768-69. In spite of its agreement, the State in *Sherman* failed to produce the records and then waited until the day *after* trial was to have begun to seek reconsideration of the order. The *Sherman* court found the State's actions to be prejudicial to the defense, especially since the defense had emphasized the importance of these records weeks prior to trial. *Sherman*, at 771. Importantly, the *Sherman* court found that the combined actions by the State — the late amendment of the information, the failure to produce a separate witness list, and the motion to add an expert witness on the day of trial — demonstrated the extent of the State's mismanagement

of its case. *Sherman*, at 772. There is no such record of mis-management here.

Unlike *Sherman*, the trial court in this case made no findings that the prosecutor's actions prejudiced the defend-ants. Our review of the record indicates that the prosecu-tor's actions were reasonable. The prosecutor filed a motion for reconsideration of the trial court's order based on CrR 4.7(d). The prosecutor advised both the court and defense counsel of his efforts to obtain the documents and even suggested that the court issue a subpoena duces tecum. There was no showing of "game playing", mismanagement, or other governmental misconduct on the part of the State that prejudiced the defense.

The trial court abused its discretion by dismissing this prosecution on untenable grounds. "[W]here there is no evi-dence of arbitrary prosecutorial action or governmental mis-conduct (including mismanagement of the case . . .), the court's dismissal will be reversed." (Citations omitted.) *State v. Underwood*, 33 Wn. App. 833, 837, 658 P.2d 50 (citing *State v. Starrish*, 86 Wn.2d 200, 206-07, 544 P.2d 1 (1975)), *review denied*, 99 Wn.2d 1012 (1983). Even if there were governmental misconduct, dismissal is not required absent a showing of prejudice to the defense. *See Orwick*, 113 Wn.2d at 830-31. There was no such showing here.

CONCLUSION

This case is remanded for further proceedings consistent with this opinion.

ANDERSEN, C.J., and UTTER, BRACHTENBACH, DURHAM, SMITH, and JOHNSON, JJ., concur.