Submitted December 18, 2014, affirmed December 30, 2015, petition for review denied April 21, 2016 (359 Or 166)

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

GEOFFREY DON WIXOM,
*Defendant-Appellant.*

Washington County Circuit Court
C112365CR; A152893

366 P3d 353

Peter Gartlan, Chief Defender, and Erica Herb, Deputy Public Defender, Offfice of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Jona J. Maukonen, Assistant Attorney General, filed the brief respondent.

Before Armstrong, Presiding Judge, and Nakamoto, Judge, and Egan, Judge.

NAKAMOTO, J.

## NAKAMOTO, J.

Defendant appeals a judgment convicting him of one count of first-degree sexual abuse, ORS 163.427. Before trial, defendant moved for the court's *in camera* review of the victim's juvenile dependency records maintained by the Department of Human Services (DHS), which defendant believed would yield information helpful to the defense at trial. Defendant also moved to exclude a video recording of the victim's interview conducted at Child Abuse Response and Evaluation Services Northwest (CARES), a child abuse assessment center, after the victim disclosed the abuse. The trial court denied defendant's pretrial motions. On appeal, defendant argues that the trial court erred in failing to conduct an *in camera* review of the DHS records, admitting the video recording of the victim's CARES interview, and allowing the recording in the jury room during deliberations. For the reasons that follow, we affirm.

## I. BACKGROUND

The victim was born in 1998 and is defendant's stepdaughter. Defendant married the victim's mother in 2002 and, until their divorce in 2009, defendant and the victim's mother lived together with the victim as a family. In 2009, DHS removed the victim from her mother's care, due to her mother's problems, and the victim was placed in several different foster homes. While the victim was in foster care, defendant maintained his relationship with her through visits.

A year later, the victim was returned to her mother, who lived next door to defendant, and the victim began regularly spending every other weekend at defendant's house. Eventually, the victim moved to defendant's house. Several months later, the victim fell asleep while watching a movie with defendant and awoke to find him touching her vagina under her underwear. After the victim reported the incident to her mother, the mother's boyfriend reported the incident to DHS.

As part of DHS's investigation, the DHS protective services worker arranged for the victim to be interviewed at CARES. The victim told the interviewer that defendant had

molested her and described the abuse. The interview was video recorded.

A grand jury issued an indictment charging defendant with one count of first-degree sexual abuse, based on the victim's disclosures. Before trial, DHS disclosed to the prosecutor and defense counsel its records of its investigation of the allegation that defendant had sexually abused the victim. However, DHS informed defense counsel that it would not produce additional, noninvestigatory records because they were confidential.

Defendant filed a pretrial motion in which he sought to discover DHS's records pertaining to the victim and her foster care placements. The trial court denied the motion, with leave to renew the request. Defendant did not seek those DHS records again, either before or at trial.

Defendant also filed a pretrial motion to exclude the recorded CARES interview and to preclude the video from going into the jury room. The trial court denied the motion. At trial, the state played the entire video recording of the victim's interview at CARES, and the recording was in the jury room during the jury's deliberations.

The jury found defendant guilty of the single charge of first-degree sexual abuse. Defendant now challenges the court's rulings concerning the DHS records and the video recording of the CARES interview.

## II.  DISCOVERY OF THE DHS RECORDS

On appeal, defendant first assigns error to the denial of his motion for discovery of the DHS records. He contends that (1) he was statutorily entitled to an *in camera* review of the DHS records under two discovery statutes, ORS 135.815 and ORS 135.873, because they relate to the victim and no evidentiary privilege protected the records from discovery, and (2) he was constitutionally entitled to an *in camera* review of the DHS records and to disclosure of relevant and exculpatory material in DHS's records under a number of provisions of the Oregon and United States constitutions.

Whether defendant was entitled to discovery is a question of law, which we review for legal error. *See State v. Divito*, 330 Or 319, 327-28, 5 P3d 1103 (2000) (noting that "the trial court acted on the basis of a misunderstanding of the law" when it imposed on the state a discovery obligation under ORS 135.815). In reviewing discovery rulings, we are bound by the trial court's factual findings, if supported by evidence in the record. *State v. Brown*, 310 Or 347, 366, 800 P2d 259 (1990); *State v. Addicks*, 34 Or App 557, 560, 579 P2d 289, *rev den*, 284 Or 80-a (1978). We conclude that defendant did not demonstrate a statutory or constitutional entitlement to an *in camera* review of the DHS records. The trial court did not err.

As noted earlier, defendant received records of DHS's investigation of the sexual abuse allegation against defendant. In his motion, defendant sought notes and reports in DHS's records concerning the victim's previous placement in foster care and her behavior. The only records at issue in this case are those juvenile dependency documents in the victim's DHS file, which DHS refused to produce on the ground that they are confidential and protected from review, even by the prosecution.

Defense counsel's declaration in support of the motion stated that good cause existed for an order to DHS to produce its records, "because after being served with a valid subpoena, DHS has informed defense counsel that absent an Order, such as the one sought, DHS will not comply with the subpoena." In addition, defense counsel averred that "[d]efendant believes the requested records are material to the issue of guilt or innocence, and that the materials are favorable to the defense." Defense counsel also stated that defendant's interest in receiving exculpatory evidence outweighed the confidential nature of the records. As for defendant's need for the records, defense counsel explained that "some of this information could be exculpatory":

> "For example, I believe the reports could contain information about potential witnesses in this case, such as [the victim's] foster parents and biological mother * * *. I believe that background information on [the victim's mother], as well as DHS's evaluation of [the victim's] various foster

placements may provide exculpatory evidence. In addition, I believe the records likely provide information on [the victim's] family life, as well as her physical and emotional states. Such information could form the basis of a defense that [the victim] has fabricated some or all of the current allegation."

At the hearing on defendant's motion for *in camera* review, defense counsel similarly argued a series of beliefs or "suspicions":

"I have strong suspicions that there's—based on my investigation, that there are things that will lead to—that will lead us to discussions about the complaining witness's character for truthfulness or the propensity for truthfulness or untruthfulness and possible prior false allegations.

"* * * * *

"I have strong suspicions that things like this are in there, based on my investigation and based on what we've uncovered in the background so far. * * * I have strong expectations that there are such things in there. I cannot confirm that there are such things."

The state opposed defendant's motion, arguing that defendant's general request, which the state deemed "a fishing expedition," consisted of only vague and generalized assertions that did not demonstrate that the information sought was favorable to him and material to the issues in the case, as required by *State v. Bassine*, 188 Or App 228, 235, 71 P3d 72, *adh'd to as modified on recons*, 189 Or App 487, 76 P3d 668 (2003), *rev den*, 337 Or 182 (2004). The state asserted that defendant had already received all of the relevant DHS records to which he was entitled.

After oral argument, the trial court denied the motion, but it invited defendant to reopen the question of a subpoena for DHS's records at a later juncture. Specifically, the court stated:

"Based on the record in front of me, it appears that the records from DHS that were clearly related to this incident and to other incidents that appeared to be related have been released already on the motion before me. There is [not] a sufficient basis for the Court to issue a pretrial subpoena for an in-camera inspection of the DHS records,

and so I'm denying that. I understand other discovery has already been provided.

"I want to remind counsel that sometimes an initial request like this is insufficient, and it may well be that further investigation leads to \* \* \* a more targeted and perhaps sufficient motion. But this one is not."

Before turning to the merits of defendant's discovery arguments, we address the state's contention that defendant's assignment of error is unpreserved for appellate review. Because of the court's ruling, the DHS records are not part of the appellate record. Relying on *State v. Harvey*, 203 Or App 343, 347, 125 P3d 792 (2005), *rev den*, 340 Or 359 (2006), the state posits that the lack of those records renders the assignment of error unreviewable. We reject the state's argument, because we are in a position to address the assignment without the DHS records.

This case presents a significantly different situation than the one in *Harvey*, which involved a trial court's mid-trial refusal to conduct an *in camera* review of the defendant's victim's medical records. *Id.* at 346. Before trial, the defendant issued a subpoenas *duces tecum* seeking the victim's medical records and sought the court's examination of the records *in camera*. The state successfully moved to quash the subpoenas; however, the trial court invited the defendant to reopen the question at trial. *Id.* at 345. At trial, the defendant renewed his request for an *in camera* review of the previously subpoenaed medical records. But, the defendant failed to issue a subpoena for production of the records at trial, and so the trial court had no records to review *in camera*. *Id.* at 346-47. We affirmed because we could not "determine whether any error committed by the trial court in failing to inspect the records is prejudicial, as we are obligated to do." *Id.* at 347.

In contrast, this case involves a pretrial denial of a motion for *in camera* review, and, as we noted in *Harvey*, "a subpoena *duces tecum* directed to a third party cannot be used as [a] discovery device to command the pretrial production of evidence to be used at trial." *Id.* at 346; *see also State v. Running*, 336 Or 545, 561, 87 P3d 661 (2004) (noting that ORS 136.580 does not allow a criminal defendant to

use the subpoena *duces tecum* as a discovery device). Thus, the question presented here is whether defendant was entitled to obtain *in camera* review of other parts of the victim's DHS records before trial, as he contended, or whether, as the state contended and the trial court concluded, defendant's motion was insufficient. As the following analysis reflects, that is a question of law for which we do not need the DHS records. Accordingly, we turn to the merits of defendant's first assignment of error.

A.  *Defendant's Statutory Entitlement Argument*

Defendant relies on two statutes, ORS 135.815 and ORS 135.873, as authority for his claim that the prosecutor controlled the DHS records and so the trial court was required to permit defendant to subpoena those records and then was required to review them *in camera* before trial. We conclude that, on this record, the statutes fail to support defendant's position.

The first statute, ORS 135.815, governs the prosecutor's discovery obligations. It provides, in part:

"(1)  Except as otherwise provided in ORS 135.855 and 135.873, the district attorney shall disclose to a represented defendant the following material and information within the *possession or control* of the district attorney:

"* * * * *

"(g)  Any material or information that tends to:

"(A)  Exculpate the defendant;

"(B)  Negate or mitigate the defendant's guilt or punishment; or

"(C)  Impeach a person the district attorney intends to call as a witness at the trial."

(Emphasis added.)

Initially, the parties are at odds over whether the DHS records that defendant sought were in the prosecutor's control, as required under ORS 135.815(1). The legal standard for prosecutorial control of records is not disputed. As we have recently explained, "if an entity is *required* to disclose records to the district attorney or to police, the prosecution

has control over the records and, accordingly, must disclose to a defendant any of those records that fall within ORS 135.815." *State v. Daniels*, 261 Or App 519, 528, 323 P3d 491, *rev den*, 355 Or 668 (2014) (emphasis in original). And, "information that the prosecutor may obtain directly is within the prosecutor's 'control' *** even if it was not in the prosecutor's physical possession." *State v. Warren*, 304 Or 428, 433, 746 P2d 711 (1987); *accord State ex rel Wilson v. Thomas*, 74 Or App 137, 141, 700 P2d 1045, *rev den*, 300 Or 64 (1985) ("[T]he police are an arm of the prosecution for the purposes of the discovery statute.").[1]

Relying heavily on *Warren*, defendant argues that the discovery he was afforded was insufficient. In his view, *Warren* stands for the proposition that a criminal defendant is entitled to discover all exculpatory information in a DHS file that pertains to the victim and that a trial court must review such files *in camera*. In that case, the Supreme Court held that an *"in camera* review by the trial judge of [Children's Services Division (CSD)] files,[2] as guided by [the] defendant's discovery request, [was] required," and it remanded the case to "the trial judge [to] examine the file *in camera* to determine whether there exists exculpatory evidence that should be made available to the defendant." 304 Or at 435.

Although at first glance it might appear that *Warren* requires an *in camera* review of a victim's entire DHS file, *Warren* does not control discovery of the DHS file in this case. That is because the records of CSD at issue in *Warren* involved not foster care records but instead CSD's record of its investigation after a woman reported that her daughter had been sexually abused. *Id.* at 430. "CSD interviewed the

---

[1] The prosecutor in this case had control over the DHS records concerning DHS's investigation of the sexual abuse allegation against defendant. Although DHS is not generally part of the prosecution in cases involving child abuse, DHS serves an investigative function similar to a police agency. *Wilson*, 74 Or App at 140. By statute, DHS is required to disclose records related to child abuse reports and records to "[a]ny law enforcement agency or a child abuse registry in any other state for the purpose of subsequent investigation of child abuse." ORS 419B.035(1)(a). It is undisputed that the prosecutor obtained those DHS records regarding DHS's investigation of sexual abuse of the victim and disclosed them to defendant.

[2] DHS was formerly known as CSD. *State ex rel Dept. of Human Services v. Hinds*, 191 Or App 78, 81 n 1, 81 P3d 99 (2003).

mother and daughter, evaluated them and offered counseling services. Notes and evaluations were compiled in a CSD case file." *Id.* After criminal charges were filed, the state gave the defendant "materials from CSD files selected and summarized by the CSD caseworker." *Id.* Thus, the court in *Warren* addressed whether CSD's selections of portions of the abuse investigation and its summaries of some documents in the investigatory file provided adequate discovery.

Here, in contrast, the disputed records concern not the investigation of the victim's sexual abuse allegation but, instead, DHS's earlier involvement with the victim and her placement in foster care as a result of child dependency proceedings. As explained below, records, by statute, are confidential, and these circumstances do not fall within the limited statutory exceptions for disclosure of such records.

Generally, all DHS records pertaining to an individual, family, or other recipient of DHS services are confidential pursuant to ORS 409.225(1). That statute prohibits disclosure of "any child welfare records, files, papers or communications that contain any information about an individual child, family or other recipient of services for purposes other than those directly connected with the administration of child welfare laws or unless required or authorized by" ORS 419B.035. Various exceptions to the prohibition on disclosure in ORS 409.225(1) are listed in subsections (2) and (3) of ORS 409.225, but none of those applies here.[3]

---

[3] ORS 409.225(2) provides:

"Notwithstanding subsection (1) of this section, unless exempt from disclosure under ORS chapter 192, the department shall disclose child welfare records:

"(a) About a recipient of services, to the recipient if the recipient is 18 years of age or older or is legally emancipated, unless prohibited by court order;

"(b) Regarding a specific individual if the individual gives written authorization to release confidential information;

"(c) Concerning a child receiving services on a voluntary basis, to the child's parent or legal guardian;

"(d) To the juvenile court in proceedings regarding the child; and

"(e) Concerning a child who is or has been in the custody of the department, to the child's parent or legal guardian except:

"(A) When the child objects; or

Subsection (1) of ORS 419B.035, the statute referenced in ORS 409.225(1), makes DHS records related to child-abuse reports confidential, with limited exceptions. In part, ORS 419B.035(1) states:

"Notwithstanding the provisions of ORS 192.001 to 192.170, 192.210 to 192.505 and 192.610 to 192.990 relating to confidentiality and accessibility for public inspection of public records and public documents, reports and records compiled under the provisions of ORS 419B.010 to 419B.050 *are confidential and may not be disclosed except as provided in this section.*"

(Emphasis added.) Defendant does not argue that his request for DHS records concerning the victim's earlier placement in foster care falls within any specific exception in ORS 419B.035.

Additionally, DHS generally may not disclose any identifying information about any person who maintains a foster home under ORS 418.642(1) (notwithstanding the public records law, such information is "confidential and not accessible for public inspection"). However, DHS may, by rule, permit disclosure of such information "when necessary or advisable to protect the best interests of a child" or for "the administration of the child welfare laws." ORS 418.642(2). Again, defendant does not contend that DHS's statutory obligation to maintain the confidentiality of its records concerning the victim's foster care placements does not apply in the circumstances of this case.

Defendant instead relies on a provision in the juvenile dependency laws, ORS 419B.040, and suggests that the

---

"(B) If disclosure would be contrary to the best interests of any child or could be harmful to the person caring for the child."

ORS 409.225(3) provides:

"Notwithstanding subsection (1) of this section, unless exempt from disclosure under ORS chapter 192, the department shall disclose child welfare records, if in the best interests of the child, to:

"(a) Treatment providers, foster parents, adoptive parents, school officials or other persons providing services to the child or family to the extent that such disclosure is necessary to provide services to the child or family; or

"(b) A person designated as a member of a sensitive review committee convened by the Director of Human Services when the purpose of the committee is to determine whether the department acted appropriately and to make recommendations to the department regarding policy and practice."

records he seeks both are not privileged and are subject to pretrial discovery. Specifically, he asserts that the statute "abrogated any privilege that prevented the court from conducting an *in camera* review of the records for exculpatory evidence." We disagree with defendant's suggestion that ORS 419B.040 allows him to obtain pretrial discovery of DHS's foster care and juvenile dependency records concerning the victim.

In the case of abuse of a child, ORS 419B.040 provides that

"the privileges created in [OEC 504 to 505], including the psychotherapist-patient privilege, the physician-patient privilege, the privileges extended to nurses, to staff members of schools and to regulated social workers and the husband-wife privilege *shall not be a ground for excluding evidence regarding a child's abuse, or the cause thereof,* in any judicial proceeding resulting from a report made pursuant to ORS 419B.010 to 419B.050."

(Emphasis added.) The plain reading of ORS 419B.040 indicates that its subject matter is limited to specific evidentiary privileges—those created in OEC 504 to 505—and that those privileges are made inapplicable in the case of evidence regarding a child's abuse or the cause of a child's abuse. The context of ORS 419B.040 supports that plain reading because the statute is located within a series of statutes, ORS 419B.010 to 419B.050, that pertain to reports and investigation of child abuse. Moreover, we have explained that ORS 419B.040 is a limited exception to the evidentiary privileges "for both exculpatory and inculpatory statements that *reference the abuse of a child in the case being decided.*" *State v. Evans,* 260 Or App 270, 273, 317 P3d 290 (2013), *rev den,* 355 Or 142 (2014) (emphasis added).

As noted above, here, the disputed records do not concern the investigation of the reported sexual abuse of the victim; defendant had already received those records. Instead, defendant seeks records that concern DHS's involvement with the victim and her placement in foster care as a result of child dependency proceedings, both of which predated defendant's sexual abuse of the victim. Defendant has not contended that the foster care records reference

the sexual abuse of the victim. Thus, we conclude that ORS 419B.040 did not require pretrial disclosure of the victim's foster care records.

Moreover, defendant's argument overlooks that the Supreme Court again addressed the confidential nature of DHS records in *State ex rel Dugan v. Tiktin*, 313 Or 607, 837 P2d 959 (1992), on facts similar to those here. The court in *Tiktin* rejected the foundation of defendant's argument under ORS 135.815(1), namely, that the prosecutor has access to both the investigation records concerning alleged sexual abuse of the victim and the "background" records that DHS has concerning the victim.

In *Tiktin*, a mandamus proceeding, the defendants were charged with, among other things, first-degree sexual abuse of children. *Id.* at 609-10. Each of the alleged victims was in the legal custody of CSD for reasons unrelated to the criminal charges, and so CSD had files pertaining to each victim. *Id.* at 610. Upon defense motions for the trial court's *in camera* review of the files, the trial court ordered the district attorney to obtain the CSD file for each victim, review them for discoverable information, and provide required disclosures to the defendants. *Id.* at 610-11. The district attorney and CSD filed a petition for an alternative writ of mandamus, asking the Supreme Court to direct the defendant judge to vacate the order. *Id.* at 612. On review, the Supreme Court noted that a CSD file "often contains confidential information about persons other than the alleged victim in a criminal case, and contains categories of information made confidential by statutes and rules." *Id.* at 616. The court stated that, although CSD is authorized to disclose "child abuse reports and records" to the district attorney, there is

> "no statutory authority for CSD to disclose other information in its file to the district attorney. Defendant judge's order, therefore, requires the district attorney to examine documents to which he does not otherwise have access and that could be made confidential by both statute and rule."

*Id.* Ultimately, the court issued a peremptory writ of mandamus. *Id.* at 617.

In light of the statutes concerning the confidential nature of the DHS foster care records and *Tiktin*, it is apparent that the records that defendant sought in this case were not in the prosecutor's control under ORS 135.815(1) and were not discoverable. "It is axiomatic that the district attorney cannot disclose information that the district attorney does not have, to which the district attorney does not have access, or over which the district attorney does not have control." *Tiktin*, 313 Or at 613 n 5. In short, there was no statutory authority under ORS 135.815(1) for the trial court to conduct an *in camera* review.

Defendant next relies on a second discovery-related statute, ORS 135.873, as authority for the *in camera* review of the DHS foster care records. In relevant part, ORS 135.873 provides:

"(2) Upon a showing of good cause, the court may at any time order that specified disclosures be denied, restricted or deferred, or make such other order as is appropriate.

"(3) Upon request of any party, the court may permit a showing of good cause for denial or regulation of disclosures, or portion of such showing, to be made in camera. A record shall be made of such proceedings."

Under ORS 135.873, when an accused in a criminal case seeks pretrial access to a confidential DHS file that is outside the prosecutor's possession and control, the trial court, upon a showing of "good cause" for disclosure, has a statutory duty to examine the requested file *in camera* to determine whether it contains information to which the accused is entitled. *Tiktin*, 313 Or at 609. "In the context of the discovery statutes, good cause means a substantial reason—one that affords a legal excuse. * * * An assumed or imaginary pretense is insufficient." *State v. Pettit*, 66 Or App 575, 578, 675 P2d 183, *rev den*, 297 Or 227 (1984). Even without ORS 135.815(1), the Due Process Clause of the United States Constitution requires a prosecutor "to disclose certain information" in accordance with *Brady v. Maryland*, 373 US 83, 83 S Ct 1194, 10 L Ed 2d 215 (1963), and, under ORS 135.873, "a court may deny or restrict disclosure and may conduct a private *in camera* inspection of the material to see if there is good cause for regulation of the disclosure."

*State v. Heisler*, 106 Or App 7, 9-10, 806 P2d 1154 (1991). A defendant in a criminal case must make a showing that the information is "favorable to him and material to guilt or punishment." *Id.* at 10.

We have explained that it is "difficult to formulate a precise rule to indicate what showing must be made" by a defendant before a trial court must conduct an *in camera* inspection of evidence and that trial courts are vested with "considerable discretion" in making that determination. *State ex rel Johnson v. Schwartz*, 26 Or App 279, 283, 552 P2d 571 (1976). However, a defendant should "state with as much particularity as possible" the evidence that is favorable to him or her, *State ex rel Dooley v. Connall*, 257 Or 94, 103, 475 P2d 582 (1970), and a trial court is not obligated to undertake *in camera* review of records, including voluminous child protective services records, *see State ex rel Carlile v. Lewis*, 310 Or 541, 545, 800 P2d 766 (1990) (recognizing that "some CSD files are voluminous" and that inspection of them "may require considerable time"), when the asserted materiality of the information sought is "pure conjecture." *State v. Sagner*, 18 Or App 464, 471, 525 P2d 1073 (1974).

The issue before us, therefore, is whether the trial court correctly concluded that defendant's showing of materiality and favorableness was inadequate. Defendant's motion and the pretrial hearing transcript demonstrate that, although defendant articulated a belief and a suspicion that the DHS foster care records would contain helpful impeachment information for the defense, he did not point out exculpatory facts that the DHS records would show or lay a foundation for why there was reason to believe that the DHS records would contain any such facts, such as by articulating facts known by him or by others that led to his belief and suspicion. The trial court did not err in denying defendant's motion because it presented nonspecific conjecture concerning the DHS foster care records. Thus, defendant did not establish that either ORS 135.815(1) or ORS 135.873 required the trial court to conduct a pretrial *in camera* review of DHS's confidential records regarding the victim's earlier placement in foster care.

## B. Defendant's Constitutional Arguments

### 1. Compulsory process rights

We turn next to defendant's assertion that, discovery statutes aside, he was entitled under provisions of the Oregon and United States constitutions to the trial court's pretrial *in camera* review of the DHS records. We first address defendant's abbreviated argument that he was entitled to an *in camera* review of the DHS records based on the compulsory process provisions in Article I, section 11, of the Oregon Constitution and the Sixth Amendment to the United States Constitution.[4]

The right to compulsory process under Article I, section 11, parallels Sixth Amendment jurisprudence, *State v. Mai*, 294 Or 269, 272, 656 P2d 315 (1982), and the analysis of the two constitutional provisions is the same, *State v. Zinsli*, 156 Or App 245, 251-52, 966 P2d 1200, *rev den*, 328 Or 194 (1998). A criminal defendant's entitlement to discovery secured by Article I, section 11, and the Sixth Amendment is limited to information that is both (1) in the possession of the prosecution and (2) material and favorable to a defendant's guilt or punishment. *State v. West*, 250 Or App 196, 203, 279 P3d 354 (2012) (citing *Brady*, 373 US at 87); *accord State v. Pelham*, 136 Or App 336, 344-46, 901 P2d 972 (1995), *rev den*, 323 Or 264 (1996). Once the prosecution has fulfilled its affirmative duty to disclose material and favorable information in its possession, which it did in this case, a defendant must make a further showing of favorability and materiality of additional requested material within the prosecutor's possession. *State v. Koennecke*, 274 Or 169, 179, 545 P2d 127 (1976). Defendant's compulsory process argument fails because, as we have already concluded, the DHS records pertaining to the victim's placement in foster care were not in the prosecutor's possession.

---

[4] Article I, section 11, provides, in part, that, "[i]n all criminal prosecutions, the accused shall have the right * * * to meet the witnesses face to face, and to have compulsory process for obtaining witnesses in his favor."

The Sixth Amendment to the United States Constitution provides, in part, that, "[i]n all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him [and] to have compulsory process for obtaining witnesses in his favor."

## 2. Right to confront witnesses

We also reject defendant's argument based on his state and federal constitutional rights to confront witnesses under Article I, section 11, and the Sixth Amendment. Defendant claims that, by denying him access to the DHS records necessary to prepare his defense, the trial court interfered with his right of cross-examination. We disagree, because the right to confront witnesses is fundamentally a trial-based right, and defendant's right to cross-examine witnesses at trial was not restricted.

The Sixth Amendment provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him." Thus, by its terms, the amendment applies to "criminal prosecutions," and the United States Supreme Court has held that "criminal prosecutions" in the Sixth Amendment refers to criminal trials and, concomitantly, that the right to confront witnesses is "a *trial* right." *Pennsylvania v. Ritchie*, 480 US 39, 52-53, 107 S Ct 989, 94 L Ed 2d 40 (1987) (emphasis in original); *see also California v. Green*, 399 US 149, 157, 90 S Ct 1930, 26 L Ed 2d 489 (1970) (stating that it is the right to confront witnesses "at the time of trial that forms the core of the values furthered by the Confrontation Clause").

Specifically as to cross-examination, the Sixth Amendment requires a full opportunity for effective cross-examination, and not necessarily the entire extent or manner of the cross-examination that the defendant wishes to conduct. *Delaware v. Fensterer*, 474 US 15, 19-20, 106 S Ct 292, 88 L Ed 2d 15 (1985). Rather, the right to confront witnesses at trial is "designed to prevent improper restrictions on the types of questions that defense counsel may ask during cross-examination." *Ritchie*, 480 US at 52. The "ability to question adverse witnesses, however, does not include the power to require the pretrial disclosure of any and all information that might be useful in contradicting unfavorable testimony." *Id.* at 53. The Sixth Amendment Confrontation Clause "does not compel the pretrial production of information that might be useful in preparing for trial." *Id.* at 53 n 9.

Under Article I, section 11, a defendant in a criminal prosecution has the right "to meet the witnesses face to face." Like the Sixth Amendment, the confrontation clause in Article I, section 11, concerns the opportunity for effective cross-examination at trial and does not require that the defendant to be allowed to use the exact method of cross-examination that he wishes to conduct. *Zinsli*, 156 Or App at 251. In *Zinsli*, because the defendant had an opportunity to cross-examine the arresting officer, we reversed the trial court's determination that the state's inadvertent destruction of a videotape of the defendant's field sobriety tests, which the defendant claimed was material and exculpatory, violated his right to confront witnesses and required dismissal of the action before trial. *Id.* at 247. Similarly, in *State v. Rood*, 118 Or App 480, 483, 848 P2d 128, *rev den*, 317 Or 272 (1993), we rejected the defendant's argument that, although the victim testified at trial and the defendant was able to cross-examine him without limitation, the trial court's denial of his pretrial motion to require the victim to give testimony before trial regarding the victim's earlier and similar allegations of sexual abuse against two others violated the defendant's right to confront witnesses at trial.

Here, the trial court's ruling concerning pretrial discovery did not implicate defendant's constitutional right to conduct cross-examination. Defendant cross-examined the state's witnesses at trial, and he does not complain that his examination of the witnesses was otherwise limited. The trial court did not violate defendant's confrontation right by denying his pretrial request for an *in camera* review of DHS's foster care records concerning the victim.

3. *Due process rights*

Lastly, defendant relies on the Due Process Clause of the Fourteenth Amendment to the United States Constitution, contending that the trial court's decision not to conduct an *in camera* review and not to require disclosure of the DHS foster care records violated his right to a fair trial. We conclude that defendant was not denied a fair trial.

Defendant acknowledges that, to establish a due process violation, he must demonstrate that the DHS records

would have been material and favorable to his defense. *United States v. Bagley*, 473 US 667, 682, 105 S Ct 3375, 87 L Ed 2d 481 (1985); *State v. Bittner*, 235 Or App 554, 564, 234 P3d 1012, *rev den*, 349 Or 370 (2010). Defendant's vague assertions in the trial court that there were "things" in the DHS file that would lead to "discussion about the complaining witness's character for truthfulness or the propensity for truthfulness or untruthfulness and possible false allegations" did not satisfy his burden. Given the submissions that were before the trial court when defendant made his motion for *in camera* review and the conclusory nature of his argument—both in the motion and at the pretrial hearing—we cannot say that the court erred.

In sum, the trial court's ruling did not violate defendant's confrontation, compulsory, or due process rights. We accordingly conclude that the trial court did not err in denying defendant's motion for an *in camera* review of DHS records that were unrelated to its sexual abuse investigation.

### III. CARES INTERVIEW

We turn to defendant's second and third assignments of error, concerning the video recording of the CARES interview of the victim. Before trial, defendant moved to exclude the interview, relying on both ORS 136.420 and OEC 403. The trial court denied the motion. Defendant assigns error to that ruling, as well as to the trial court's decision to send the video recording into the jury room during deliberations. We reject both assignments of error.

In a criminal case, "the testimony of a witness shall be given orally in the presence of the court and jury" except in limited circumstances not relevant here. ORS 136.420. Defendant contends that, in violation of ORS 136.420, the trial court's admission of the video recording of the victim's CARES interview was tantamount to permitting her to testify by video recording. Our recent decision in *State v. Rascon*, 269 Or App 844, 346 P3d 601, *rev den*, 357 Or 596 (2015), issued after defendant filed his brief in this case, is controlling. There, we rejected the same argument that defendant makes here and held that "the admission of the videotape comported with defendant's statutory confrontation rights under ORS 136.420." *Id.* at 848.

Defendant also argues that OEC 403[5] required exclusion of the video recording of the interview. We have reviewed the video and conclude that the trial court did not abuse its discretion in concluding that the probative value of the interview was not substantially outweighed by the danger of unfair prejudice or other considerations. *See State v. Brumwell*, 350 Or 93, 107, 249 P3d 965 (2011), *cert den*, ___ US ___, 132 S Ct 1028 (2012) (we review a trial court's decision to admit evidence over an OEC 403 objection for abuse of discretion).

As for the trial court's decision to send the video recording into the jury room during deliberations, defendant argues that OEC 403 barred the court from doing that. That argument is foreclosed by our decision in *State v. Disney*, 260 Or App 685, 686, 320 P3d 639 (2014), *rev den*, 357 Or 143 (2015), in which we summarily rejected an identical argument that the trial court erred under OEC 403 "by allowing the jury to access the videotaped interview [of the child victim] during its deliberations."

Affirmed.

---

[5] OEC 403 states:

"Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay or needless presentation of cumulative evidence."